# Pullman Palace Car Co. *v.* Adams.

*Action Against Sleeping Car Company by Passenger to recover Damages for Loss of Personal Property.*

1. *Action against sleeping car company; pleading and practice; sufficiency of complaint.*—In an action against a sleeping car company by a passenger, a count of the complaint which avers that the plaintiff, on retiring in a berth which he had purchased for the night, placed his pocket-book containing money and a diamond ring in his vest pocket and hung it in the hammock provided for that purpose in the rear of the berth, and when he arose next morning he found that his pocket-book and its contents had been stolen from his vest, which fact he made known to the conductor of the sleeping car, but none of the property was ever restored to the plaintiff, and that the loss occurred "by reason of defendant's negligently failing to provide suitable, proper and efficient employés to protect said property of plaintiff on his said journey," sufficiently advises the defendant of what the plaintiff complains and states a cause of action, and is not subject to demurrer upon the ground that it fails to show that there was a duty on the defendant to make provision for the protection of plaintiff's property during his passage, or that it fails to allege that the company did not have a watchman, or that its watchman failed to exercise proper care to protect plaintiff's property.

2. *Same; same; same.*—In such an action a count of the complaint which after averring the facts of the purchase by the plaintiff of a berth, and upon his retiring, that he placed his pocket-book in his vest pocket and hung it in the hammock provided for that purpose, then avers that the pocket-book and its contents had been stolen out of his vest, and although he made known the fact of the theft to the conductor of the sleeping

[Pullman Palace Car Co. v. Adams.]

car, none of the property was ever restored to the plaintiff, and that said "grievances occurred by reason of defendant's employés on said car, whose duty it was so to do, negligently failing to protect said property from depredation of thieves on said car," sufficiently states a cause of action and is not subject to demurrer.

3. *Same; same; sufficiency of plea of contributory negligence.*—In such an action, a plea which alleges that the plaintiff was negligent in placing his pocket-book "in the hammock swinging over his berth, which was not provided for that purpose, instead of placing it under his pillow, or keeping it near or on his person, which said negligence contributed proximately to his alleged loss," is insufficient as a plea of contributory negligence and presents no defense to the action.

4. *Same; liability of sleeping car company to its passengers.*—While a sleeping car company is not held to the responsibility of common carriers and inn-keepers, yet it is the duty of such company to use reasonable care to guard its passengers from theft; and if through want of such care, the personal effects of a passenger, such as he might reasonably carry with him, are stolen, the company is liable therefor.

5. *Same; same.*—The liability of a sleeping car company to a passenger for the loss of his personal effects, occasioned by the company's failure to keep watch and take reasonable care to guard its passengers from theft, extends only to clothing, ornaments and such articles as are usually carried by travellers in their hands, together with a sum of money reasonably sufficient for the expenses of the journey in which the passenger is engaged.

6. *Same; same.*—The failure of a passenger in a sleeping car, upon his retiring, to put his pocket-book in the safest place in the berth, does not preclude a recovery from the sleeping car company for its negligence in permitting a theft thereof; since the company is bound to take reasonable care to prevent the theft of its passengers' property when placed in any part of the berth.

7. *Same; same; sufficiency of plea.*—In an action against a sleeping car company by a passenger to recover damages for the theft of his pocket-book and its contents, from his vest, which, upon his retiring, was placed in the hammock hanging in the rear of the berth, a plea which alleges that the plaintiff was guilty of negligence in placing his pocket-book in the hammock which was distant from his person and which was an unsafe place for valuables to be put, and that he should have put his pocket-book and its contents under his pillow or nearer his person, and that such negligence contributed proximately to the loss complained of, is insufficient as presenting a defense to the action and is demurrable.

. [Pullman Palace Car Co. v. Adams.]

8. *Same; same; watching of car should be continuous.*—The ordinary care on the part of a sleeping car company to prevent theft from its passengers, requires that the watching in the night time while the passengers are sleeping, should be continuous and active; and if the watchman abandons his post only for a few moments, leaving the car unguarded, and during that time a theft is committed or one of the passengers is robbed as the result of such negligence, the company is liable.

9. *Same; same; charges to the jury.*—In an action against a sleeping car company by a passenger to recover damages for the loss of personal property alleged to have been stolen from the plaintiff while occupying a berth in one of defendant's cars, the fact that the plaintiff's travelling companion, who occupied the berth with him, was negligent in reference to the property, does not preclude a recovery of the sleeping car company for negligently permitting a theft of the property; and charges which instruct the jury that if the loss of plaintiff's property was the result of the negligence of the plaintiff s travelling companion, the verdict should be for the defendant, are erroneous.

10. *Same; same; same.*—In such a case, a charge which instructs the jury that the plaintiff can not recover if the property was stolen while the porter who was on the watch was awake, is erroneous and properly refused, since the porter may have been guilty of other negligence than that of going to sleep while watching the car.

11. *Same; same.*—A sleeping car company may be liable for failing to keep watch whereby one of its passenger's property is stolen though the property was stolen after said passenger's traveling companion, who occupied the berth with him, had left the berth and while he was walking up and down the aisle.

12. *Same; same; charge to the jury.*—In an action against a sleeping car company to recover damages for property stolen from a passenger while occupying a berth in one of its cars, where there was evidence tending to show negligence on the part of the defendant at a certain designated station and before reaching that point, a charge is erroneous and properly refused which instructs the jury that the company was not negligent after reaching said station, though such was the fact; such charge ignoring the evidence of negligence on the part of company's agent before the designated station was reached,

13. *Same; same; liability for theft of ring.*—A sleeping car company is not liable for negligently permitting the theft of a valuable diamond ring from the pocket-book of a sleeping passenger who had refrained from wearing the ring because the setting had become loose, and said ring was, therefore, not in a condi-that it could be worn for the use, convenience or ornament of the passenger on said trip.

14. *Same; same; same.*—The act of a passenger on a sleeping car in putting a ring that he wore on the sleeper and which he was accustomed to wear, in his pocket-book while he slept, is not contributory negligence precluding a recovery against a sleeping car company for negligently permitting the theft of the pocket-book and the ring from the passenger's berth.

15. *Pleading and practice; the giving of a charge asserting a correct principle of law not reversible error though it may tend to mislead.*—The giving by the court at the request of one of the parties, a charge which asserts a correct principle of law does not constitute a reversible error, though such charge may have, under the facts of the case, a tendency to mislead; but, if the other party apprehends that such charge was misleading, he should request an explanatory charge.

16. *Action for negligence; burden of proof as to contributory negligence.* Where, in an action seeking to recover damages for the negligence of the defendant; the defendant pleads contributory negligence on the part of the plaintiff, the burden of proving the alleged contributory negligence is on the defendant, unless the plaintiff's own evidence establishes it.

17. *Charge to the jury exacting too high a degree of proof.*—In civil cases, when the evidence is equally balanced, the verdict of the jury must be against the party upon whom rests the burden of proof; but a charge which instructs the jury that they must find according to the preponderance of the evidence is erroneous, since the measure or weight of proof to justify a verdict is that it shall reasonably convince or satisfy the minds of the jury that the facts sought to be proved exist.

APPEAL from the Circuit Court of Shelby.

Tried before the Hon. GEORGE E. BREWER.

This action was brought by the appellee, J. B. Adams, against the appellant, the Pullman Palace Car Company, to recover one hundred and fifty dollars damages for the alleged loss of the plaintiff's pocket-book containing twenty-five dollars in money and a diamond ring, The complaint contained three counts. The first count was stricken from the complaint by the plaintiff. The second and third counts were as follows: "Count 2. The plaintiff claims of the defendant the further sum of one hundred and fifty dollars for that whereas on, to-wit, Feby. 20th, 1895, the defendant was engaged in operating a sleeping car. Plaintiff purchased a berth on said car from Montgomery to New Orleans on said day. On retiring to said berth plaintiff placed his pocket-book

containing $25 in money and a diamond ring worth $125 in his vest pocket, and hung it in the hammock provided for that purpose in the rear of said berth.   When plaintiff arose in the morning he found that said pocket-book and contents had been stolen out of said vest, which fact plaintiff immediately made known to the conductor of said car, but none of said property was ever restored to plaintiff, all of which occurred by reason of defendant's negligently failing to provide suitable, proper and efficient employees to protect said property of plaintiff on his said journey.

"Count 3.   The plaintiff claims of the defendant the the further sum of one hundred and fifty dollars, for that whereas on to-wit, Feby. 20th, 1895, the defendant was engaged in operating a sleeping car.   Plaintiff purchased a berth on said car to travel in the same from Montgomery to New Orleans on said day.   On retiring in said berth plaintiff placed his pocket-book containing a diamond ring worth $125 and $25 in good money in his vest pocket, and hung it in the hammock provided for that purpose in the rear of the berth. When plaintiff arose in the morning that said pocket-book and contents had been stolen out of said vest, which fact plaintiff immediately made known to the conductor of said car, but none of said property was ever restored to plaintiff, all of which grievances occurred by reason of defendant's employees on said car, whose duty it was so to do, negligently failing to protect said property from depredation of thieves on said car, to the damage of plaintiff, one hundred and fifty dollars, wherefore he brings his suit."

To the second and third counts the defendant demurred upon the following grounds :   "*First*.   Because said counts of said complaint fail to show what duty devolved upon defendant in regard to providing proper means and safe-guards for the protection of plaintiff's property.   *Second*.   Because no facts are alleged or shown in said counts making it the duty of defendant to make any provision for the protection of plaintiff's property during his passage on said sleeping car.   *Third*.   Because no facts are averred in said counts showing any negligence whatever on the part of defendant.   *Fourth*. Because said counts do not allege or show that defend-

**SUPREME COURT** [Nov. Term,

ant failed to exercise ordinary care and prudence for the protection of plaintiff's property while he was on said car. *Fifth*. Because under the averments of said counts plaintiff retained possession and control of his said property, and gave no notice whatever to the defendant or its agents that he had the same. *Sixth*. Because there is no averment in said complaint that defendant failed to have a watchman on duty on the night in question, or that said watchman failed to exercise ordinary care to protect plaintiff against depredations by thieves or other persons." These demurrers were overruled, and the defendant duly excepted. The defendant filed four pleas. The first was that of the general issue; and the remaining were as follows: "2d. That the plaintiff was himself negligent in that he placed his pocket-book in a hammock swinging over his berth which was not provided for that purpose, instead of placing it under his pillow, or keeping it near or on his person, which said negligence contributed proximately to his alleged loss."

"3d. Defendant alleges that plaintiff himself was guilty of negligence in not properly taking care of his pocket-book and contents, which said negligence contributed proximately to his loss or injury complained of.

"4th. The defendant alleges that plaintiff himself was guilty of negligence in that he placed his pocket-book in a hammock suspended over his berth, which said hammock was distant from his person while asleep over two feet and in the reach of other persons on said car, that said hammock was an unsafe place for valuables in that it was exposed and rendered the pocket-book more easily stolen. And that he should have placed said pocket-book and contents under his pillow or otherwise nearer his person which would have been a safe way. Said negligence contributed proximately to the loss of said pocket-book and contents."

To the second plea, the plaintiff demurred upon the following grounds: "1st. It is alleged therein that the plaintiff's contributory negligence consisted in placing his pocket-book in a hammock swinging over his berth, instead of placing it under his pillow. Plaintiff says this was not contributory negligence on his part, because it is not alleged that it was the duty of plaintiff

to place his pocket-book under his pillow, or that it was more safe to place it under his pillow. 2d. Because the facts alleged in said second plea do not constitute contributory negligence on the part of plaintiff. 3d. That it purports to be a plea of contributory negligence, and the facts set out in said plea do not make out contributory negligence on the part of plaintiff.

To the third plea the plaintiff demurred upon the following grounds: "1st. It is not shown of what plaintiff's neglect to take the proper care of his pocket-book consisted. 2d. It is not alleged that any means were provided by the defendant where plaintiff could have taken better care of his pocket-book than he did. 3d. It is not alleged that the plaintiff did not take the best care of his pocket-book that he could with the means at hand."

To the fourth plea the plaintiff demurred upon the following grounds: 1st. It is not alleged that there was any safer mode provided by the defendant than that adopted by the plaintiff to take care of his pocket-book. 2d. It is not alleged that there was any other mode than that adopted by plaintiff to take care of his pocket-book. The plaintiff's demurrers to the second and third pleas were sustained, and the demurrers to the fourth plea were overruled. The defendant duly excepted to the court's sustaining the demurrers to the second and third pleas. Issue was joined upon the first and fourth pleas. The facts of the case are sufficiently stated in the opinion.

After the introduction of all the evidence the court at the request of the plaintiff gave to the jury the following written charges: (28.) "It is the duty of a sleeping car company to exercise reasonable diligence in looking after the person and property of passengers on its car while they are asleep." (29.) "It is the duty of the defendant to make out its defense of plaintiff's contributory negligence by a preponderance of the evidence, and if the evidence as to which was the safer place, under the pillow or otherwise nearer his person or in the hammock, for plaintiff to put his pocket-book, is equally balanced, then the defendant has failed to make out his plea of contributory negligence." The defendant separately excepted to the giving of each of these charges, and also separately excepted to the court's refusal to

give each of the following charges requested by it : (1.) "If the jury believe the evidence, they must find for the defendant." (4.) "The court charges the jury that if under the evidence in this case the hammock in which plaintiff says he put his vest was not the safest place in which he could have put said vest in his berth, and if they believe from the evidence that his loss occurred by reason of his not putting his vest in the safest place available in the berth, plaintiff cannot recover." (6.) "If the jury believe from the evidence that the loss of plaintiff's property was the result of negligence on the part of plaintiff, or of Alcorn who occupied the berth with plaintiff, then the plaintiff cannot recover in this case." (9.) "There is no evidence in this case that the porter went to sleep after the train reached Mobile ; and if the jury believe from the evidence that the pocket-book was not lost or stolen until after the train reached Mobile, they must find for the defendant." (17.) "Under the evidence in this case D. Alcorn was awake in the berth occupied by the plaintiff and walking up and down the aisle until the train reached Mobile, and, therefore, the plaintiff's property could not have been stolen without D. Alcorn's knowledge before reaching Mobile." (18.) "The court charges the jury that there is no evidence in this case of negligence on the part of the defendant after the train reached Mobile." (19.) "If the jury believe from the evidence that the diamond ring alleged to have been lost or stolen was not in a condition that it could be worn for the use, convenience or ornament of plaintiff on said trip, they can not find against defendant on account of its loss." (21.) "The court charges the jury that unless the ring alleged to have been lost by plaintiff was in such condition that it could be of service to plaintiff for his personal use, comfort, convenience or ornament on said trip, they can not find against defendant for its loss under the evidence in this case." (23.) "If the jury believe from the evidence that the loss of the money and ring was occasioned by plaintiff's companion Alcorn's negligence in allowing the pocket-book to fall out into the aisle of the car, they must find for the defendant." (24.) "If the jury believe from the evidence that the pocket-book was lost or

stolen by reason of Alcorn's negligence in taking the
vest out of the hammock in such manner as to allow the
pocket-book to fall on the floor and thereby become ex-
posed, they must find for the defendant." (25.) "If
the jury believe from the evidence that plaintiff's com-
panion, Alcorn, did not go to sleep nor leave the car be-
fore the train reached Mobile, and that when Alcorn got
up he handled plaintiff's vest in such a manner as to
allow the pocket-book to fall out on the floor, and if they
further believe that said pocket-book was lost or stolen
by reason of its exposed condition, without fault or neg-
ligence on the part of defendant's agents, they must find
for the defendant." (26.) "If the jury find from the
evidence that the ring was not in such condition that it
could be worn by him in the usual manner they can not
find against the defendant for the damage, occasioned
by the loss of it. If they find from the evidence that the
ring could be worn in the usual manner, the defendant
[plaintiff?] was guilty of contributory negligence in not
keeping it on his finger, and there can be no recovery
for its loss." (27.) "The court charges the jury that
the plaintiff himself in taking the journey from Mont-
gomery to New Orleans was bound to take such care and
precaution for the safety of his property as an ordinary,
reasonable man would take ; and if they find from the
evidence that plaintiff placed his pocket-book in a place
that was obviously more dangerous than some other place
nearer his person, or in such a place that his companion
on arising was liable to let the pocket-book fall to the
floor or to any other still more dangerous, and exposed
places, and that such negligence contributed proximately
to the loss complained of, they must find for the defend-
ant." (33.) "If the jury believe from the evidence, that
the plaintiff, on retiring, placed his pocket-book in a
place which was dangerous and from which it was likely
that the same would be lost or stolen when he could
have placed it in a safer place, then he was guilty of
contributory negligence, and can not recover in this
case." (34.) "Under the evidence in this case there
can be no recovery for the value of the diamond ring
that was lost by the plaintiff." (35.) "Unless the jury
believe from the evidence that the diamond ring, the

[Pullman Palace Car Co. v. Adams.]

value of which is sued for, was in such condition at the
beginning and during the journey made by the plaintiff
that the same could be used or worn by him, they can
not find against the defendant for any damages for its
loss."

There were verdict and judgment for the plaintiff.
The defendant appeals and assigns as error the several
rulings of the trial court to which exceptions were re-
served.

J. M. FALKNER, GEORGE W. JONES and RAY RUSHTON,
for appellant.—There is no specific allegation of negli-
gence in the complaint; the plaintiff evidently acting
upon the idea that the mere fact of loss creates a pre-
sumption of negligence. It is well established by the
courts of this country that the mere fact of loss of the
personal effects of a passenger on board a sleeping car
does not make out a *prima facie* case of negligence
against defendant. The burden of proof is upon the
plaintiff, to establish negligence on the part of defend-
ant.—*Curpenter v. N. Y. &c. Co.*, 124 N. Y. 53. The
gist of the action is negligence on the part of defendant.
By almost a unanimous voice, the courts have held that
a sleeping car company is not liable as a common car-
rier nor an inn-keeper.—Hutchinson on Carriers, 2d ed.,
§ 617e; *Whitney v. Pullman Co.*, 143 Mass. 243; *Lewis v.
Sleeping Car Co.*, 143 Mass. 267; *Woodruff Sleeping
Car Co. v. Diehl*, 84 Ind. 574; *Pullman Car Co. v. Gard-
ner*, 16 Amer. & Eng. R. R. Case, 328; *Same v. Gaylord*,
23 Amer. L. Reg. (N. S.) 788; *Same v. Pollock*, 69 Tex.
120; *Blum v. Palace Car Co.*, 1 Flippin 500; *Dargan v.
Pullman Co.*, 2 Willson (Tex.) 607; *Pullman Co. v.
Smith*, 73 Ill. 360; *Welch v. Pullman Co.*, 16 Abb. Pr.
(N. S.) 352; *Palmeter v. Wagner*, 11 Abb. L. J. 149;
*Pfaelzer v. Car Co.*, 4 Weekly Notes, 240; *Scaling v.
Pullman Co.*, 24 Mo. App. 29; *Carpenter v. R. R. Co.*,
124 N. Y. 53. The trial court, therefore, erred in over-
ruling the defendant's demurrers to the 2d and 3d
counts of the complaint.— *Birmingham R. & E. Co. v.
Allen*, 99 Ala. 359; 3 Lawson's Rights, Remedies &
Practice, 2159.

To hold this defendant liable under circumstances
such as are shown from this record, would establish a

precedent which would inevitably lead to innumerable
frauds.   We contend that the evidence in this case tends
to show that the pocket-book was probably lost in this
manner, and that there is not a scintilla of evidence
tending to show any negligence on the part of the de-
fendant.   It is clear, therefore, that plaintiff, having
failed to make out a case of negligence on the part of
defendant, but on the contrary, having established neg-
ligence against himself, defendant was entitled to the
general charge.—Hutchinson   on   Carriers, § 617f.
Nor will the company be liable for a loss occurring
through the negligence of the passenger in leaving his
property exposed, nor for a theft committed by a fellow
passenger, if the servants of the company were not neg-
ligent in failing to prevent it.—*Ill. Cen. R. R. Co. v.
Handy*, 63 Miss. 609 ; *Whitney v. Pullman Co.*, 143 Mass.
243 ; *Wilson v. B. & O. R. R. Co.*, 32 Mo. App. 682.

The evidence in this case shows that this diamond
ring was in a disabled condition, and not in such condi-
tion that it could be worn by the passenger in the ordi-
nary way, the stone therein being loose, and he having
carried it for some time in his pocket-book, wrapped up,
a jeweler having advised him that it was unsafe to wear
it.   Even assuming that a sleeping car company is a
common carrier, or charged with the high degree of care
imposed upon a common carrier or inn-keeper, under
the evidence in this case, it would not be responsible for
the loss of such a valuable as this.   If this ring in this
condition had been put into a trunk and the exclusive
custody on the trip had been entrusted to a common car-
rier by checking the trunk in the ordinary way, under
the law it would not be considered baggage, and if it
had been lost by the common carrier, this plaintiff could
not have recovered for its value.—Hutchinson on Car-
riers, § 617f; 3 Wood on Railroads (Minor's ed.) 1707,
§ 369.

BROWNE & LEEPER, *contra*.—The court did not err in
refusing to give the general affirmative charge for the
defendant.—*A. G. S. R. R. Co. v. Jones*, 71 Ala. 487 ;
*A. G. S. R. R. Co. v. Dobbs*, 101 Ala. 219.

"When a passenger in a sleeping car awakes and finds
that his valuables, which he had placed under his pil-

low, have been stolen during the night, and he proves that the car was so constructed that a porter or watchman stationed at one end of the car would have an unobstructed view of the whole aisle, it is a question for the jury whether the sleeping car company was guilty of negligence and whether the passenger may recover." *Bevis v. B. & O. R. R. Co.*, 26 Mo. App. 19; *Pullman P. Car Co. v. Gardner*, 16 Amer. & Eng. R. R. Cases, 324; *Ill. Cen. R. R. Co. v. Handy*, 56 Amer. Rep. 846, 63 Miss. 609; *Pullman P. C. Co. v. Mathews*, 74 Tex. 654.

HARALSON, J.—There was no error in overruling the demurrers to the 2d and 3d counts of the complaint. They sufficiently advised defendant of what the plaintiff complained, and against which he was called to defend.

Nor was there error in sustaining the demurrers to defendant's 2d and 3d pleas of contributory negligence.

The cause was tried on issue joined on the plea of the general issue, and on the 4th plea, to which a demurrer was overruled.

In this case the appellee, plaintiff below, with his friend, Alcorn, left Longview on the afternoon of February 20, 1895, to go on a journey to New Orleans. On reaching Montgomery, he and his friend went into a sleeper of the defendant company and paid $2 for an upper berth, for himself and Alcorn. About 9 o'clock, the two retired, Alcorn taking the back and plaintiff the front side of the berth. The plaintiff testified that he placed his pocket-book, which was a large one, on the inside of his vest pocket, and placed the vest in a hammock that was swinging just above, on the back side of the berth, and went to sleep shortly after retiring; that he did not awake until the train was in about an hour's run of New Orleans, and it was then daylight; that Alcorn was up and dressed and waked him up; that his vest was lying on the outer edge of the berth on the top of the cover; that his watch was in the vest as he left it, but the pocket-book was gone; that it contained amongst other things, $25 in money and a diamond ring, worth $125, and the property has never been recovered. He testified, on cross-examination, that the setting of the ring had been loose for some time; that he had worn it

until two or three weeks before going to New Orleans, and the stone being loose, on the advice of a jeweler that it was unsafe to wear it, he had carried it for that length of time in his pocket-book, with the intention of having the diamond set in a plain gold band.

Alcorn testified for plaintiff, that prior to starting out on their journey, the plaintiff had shown him two certificates of deposit on a bank amounting to $5,000, and something wrapped up in a paper, which he said was his diamond ring, and the setting was loose, was the reason he had wrapped it up ; that he occupied the berth with plaintiff, slept on the back side of the berth and placed his coat in the hammock first ; that plaintiff, when he got in the berth, placed his vest in the hammock on witness' coat ; that he could not sleep and got up about midnight, took hold of his coat with his right hand and with his left, held plainiff's vest while he drew out his own coat from the hammock, and crawled out over plaintiff who he thought was asleep ; that he saw the porter sitting on something, asleep, but did not see the conductor till the train whistled to stop at Mobile, and from the time he got out of the berth until they got to Mobile, he walked back and forth through the car, as there was no seat for him to take, and saw no one awake ; that if the porter was awake, he had his eyes closed ; that at Mobile he got out of the sleeper and went into the day coach where he remained until about sun-up, when he returned to the sleeper, and finding plaintiff asleep, he aroused him ; saw nothing on the floor, nor did he see the plaintiff's vest, but it was yet quite dark in the sleeper ; that as soon as plaintiff got up, he came forward to the wash room, where witness had gone, and stated that his vest had been rifled and his pocket-book emptied of its contents ; that the loss was reported to the conductor who caused search to be made in every nook and corner without avail.

The conductor for defendant testified, that as soon as the porter had made up the berths, he went on watch and remained until 3 o'clock in the morning, and did not leave the car at all, and sat and remained in such position that he could see down the aisle the whole length of the car ; that during his watch, no one went

38

about plaintiff's berth or disturbed anything in it, and no one entered the car that did not belong there; that about 3 o'clock he called the porter, who was sleeping in the smoking room, and as soon as the porter came and went on watch, he went to bed and slept till morning; that he retired about forty minutes before the train reached Mobile.

The porter swore that he was making up the berths and the like, till all the passengers retired, and the conductor came in and went on watch, and he then went off and went to sleep, till three o'clock in the morning, when the conductor woke him up about thirty or forty minutes before reaching Mobile, and as soon as he went on in, the conductor retired from watch; that he sat at the end of the car, in a position to see down the aisle from one end to the other, and was engaged in blacking the boots of the passengers; that he was continually in that position the remainder of the night, with the exception of the time when the train stopped at Mobile, when according to the rules, he went to the end of the car to receive passengers, and did not lock the other end of the car, the rule being that the porter of the front car was to lock his front door, and that each was to guard the rear end of his car and the front end of the next car, while the train was stopped; that the porter of the front car was in his place, and witness did not know or remember anything about Alcorn getting up out of his berth and going to the day coach.

The rule now seems to be well settled that sleeping car companies are not held to the responsibility of common carriers and inn-keepers. Many reasons for this distinction will be found stated in the text books and decisions, and nowhere more fully, perhaps, than in *Blum v. Southern Pullman Palace Car Co.*, 1 Flipp. U. S. C. Rep. (Tenn.) 500; see also Hutchinson on Carriers, 617 d.; 22 Am. & Eng. Encyc. of Law, p. 797, where the authorities may be found collated.

In *Lewis v. N. Y. S. Car Co.*, 143 Mass. 267, the rule as to the liability of such companies, as stated by MORTON, C. J., seems to have been generally approved on principle and authority. It is there said: "A sleeping car company holds itself out to the world as furnishing

[Pullman Palace Car Co. v. Adams.]

safe and comfortable cars, and, when it sells a ticket, it
impliedly stipulates to do so. It invites passengers to
pay for, and make use of, its cars for sleeping, all par-
ties knowing that, during the greater part of the night,
the passenger will be asleep, powerless to protect him-
self or to guard his property. He cannot, like the guest
of an inn, by locking the door, guard against danger.
He has no right to take any such steps to protect himself
in a sleeping car, but, by the necessity of the case, is
dependent upon the owners and officers of the car to
guard him and the property he has with him from dan-
ger from thieves or otherwise.

"The law raises the duty on the part of the car com-
pany to afford him protection. While it is not liable as
a common carrier or as an inn-keeper, yet it is its duty
to use reasonable care to guard the passengers from
theft, and if, through want of such care, the personal
effects of a passenger, such as he might reasonably carry
with him, are stolen, the company is liable for it. Such
a rule is required by public policy, and by the true in-
terests of both the passenger and the car company, and
the decided weight of authority supports it."

In *Blum's Case* 1 Flipp. *supra*, BROWN, J., in his in-
structions to the jury, after a careful statement of the
liability of such a company, concludes : "The substance
of the law, then, is this : the defendant was not only
bound to furnish the plaintiff with a berth for his accom-
modation, but to keep watch and take reasonable care
that he suffered no loss. If plaintiff's loss was occasioned
by the want of such care, and his own negligence did not
contribute to it, he is entitled to recover such sum as you
may deem reasonably necessary for his personal ex-
penses, considering the length of the journey, and all
other circumstances of the case."—*Woodruff &c. Car Co.
v. Diehl*, 84 Ind. 474 ; *I. C. R. Co. v. Handy*, 63 Miss.
609 ; *Philip Carpenter v. N. Y., N. H. & H. R. R. Co.*, 124
N. Y. 53. The liability of the company in such cases,
it has also been held, entirely consonant with reason,
does not include anything except the clothing, orna-
ments, and such articles as are usually carried by travel-
ers in their hands, together with a sum of money rea-
sonably sufficient for the expenses of the journey in
which one is engaged. The ground upon which the

principle rests, so well stated by the Mississippi court in *Handy's Case* cited above, where the traveler had with him a sum of money he was carrying to New Orleans to pay debts with, is, that "it was a much greater sum than was necessary for the payment of expenses incident to the journey he was upon, and as to all in excess of such sum there was no liability of the company, for the reason, that as to such an amount it stood in no contract relation to him, owed and undertook no duty, nor authorized its servants to do anything in reference to it. The Ohio court, in a well considered case holds that a railroad company, even, as a common carrier of passengers is not liable for the loss of money kept in the sole custody of a passenger, and which he carries without notice to the company, for purposes disconnected with the expenses of the journey, notwithstanding such loss was occasioned by the negligence of the defendant's servants. *First Nat. Bank of Greenfield v. M. & C. R. R. Co.*, 20 Ohio St. 259. The same principle would apply, as stated in the cases last cited, *in arguendo*, as to small parcels of great value. On no good principle could a traveler be allowed to carry in his pocket jewels and ornaments, wholly disconnected with his personal attire and the necessary and reasonable expenses of his journey, and hold a sleeping car company liable for them in case of loss. Such a liability would be entirely foreign to the ordinary undertaking of the company in its engagement to furnish the traveler protection, and reasonable accommodations on his journey.

From the foregoing, we may pass on the assignments of error insisted on. There was no error in refusing the general charge for the defendant, as from all the evidence the jury were authorized to draw an inference unfavorable to defendant. The plaintiff's evidence tended to show that the porter went to sleep while on his watch, and that of defendant, that he did not sleep. Besides, the porter testified, that he left the car at Mobile and went outside to receive passengers, and during his absence, it is not shown that any one was on watch inside the car. This furnished occasion when the theft may have been committed by some of the passengers, of whom there were many. The watching to secure safety of the

passengers in the night-time, should be continuous and active.—*Pullman P. Car Co. v. Gardner*, (Penn.), 16 Am. & Eng. R. Cases, 324.

There was no error in refusing charge 4 for defendant. This charge was not within the plea numbered four on which plaintiff by the ruling of the court was forced to take issue. It may be difficult for a passenger to tell where is the safest place in his berth to place his valuables, to keep them from being stolen. The plea under which the charge was requested does not postulate that it was plaintiff's duty to put his purse in the safest place, nor could any such duty be properly required of him.

Charges 6, 23 and 24 were properly refused. They each contain the instruction for a verdict for defendant, if the loss of plaintiff's property was the result of the negligence of Alcorn, a third person, who happened to be travelling with and shared the berth of plaintiff. From the evidence, we fail to see in what Alcorn was negligent, and if he was, the plaintiff, certainly, would not be responsible for it.

Charge 9 was an improper instruction. The porter may not have gone to sleep after the train left Mobile, and it would not follow, he may not have been guilty of other negligence, which the charge does not hypothesize.

Though Alcorn may have been awake until the train reached Mobile, there is no evidence that he was on watch, or ought to have been, to protect plaintiff's property. Nor does it follow because he walked the aisle until he reached Mobile, that plaintiff's purse could not have been stolen. In walking, his back was turned from plaintiff's berth as much as it was towards it. Charge 17 was properly refused.

If there was no evidence of negligence of defendant shown, occurring after the train left Mobile, it would not follow, that there had not been negligence of defendant, and that the property had not been stolen, before it reached that point. The 18th charge ignores evidence tending to show negligence of defendant at Mobile, and before reaching that point, on account of which the theft may have occurred, and was properly refused.

Charge 25 is abstract. There is no evidence that Alcorn handled the vest, as the charge hypothesizes, in

[Pullman Palace Car Co. v. Adams.]

such a manner as to allow the pocket-book to fall on the floor. Alcorn testified that he took his coat out of the hammock and left plaintiff's vest, which contained the purse, in the hammock. Plaintiff testified that when he awoke, his vest was lying on the outer edge on the cover, and this was all the evidence there was as to the position of the vest, after the theft. If Alcorn's evidence is true,—and there is nothing to the contrary,—the pocket-book as for anything he did, could not have fallen out on the floor.

Charge 27 seems to require that plaintiff should have placed his vest in the safest place in his berth and certainly distinguishes between places of safety in the berth, assuming that by depositing it in the hammock, it caused the pocket-book to be liable to fall to the floor or to some other more dangerous and exposed place by the act of Alcorn, of which there is no proof, and makes the negligence of Alcorn, the negligence of plaintiff. If a charge as to such negligence could be considered at all, it should have postulated the loss as wholly attributable to Alcorn's negligence, and not to a mere liability of loss arising from his acts. Moreover, for the purposes of another trial, as the cause must be reversed, it is well to add, that the demurrer to the 4th plea was, in our judgment, improperly overruled, and that plaintiff was entitled to the exercise of proper, reasonable care on the part of the company to prevent the theft of his pocket-book, placed anywhere in his berth. The law draws no distinction as to places of safety in the berth, and as for this, the hammock must be regarded as safe as any other place therein for the deposit of the valuables of the passenger while asleep.

Charge 33, without reference to any other fault, bases the instruction on the postulate that plaintiff was guilty of contributory negligence alone on the ground of his having placed his purse in a dangerous place, when he could have placed it in a safer one, and does not hypothesize that the pocket-book was lost on account of such contributory negligence. We may add, however, as we have said in another connection, it was entitled to protection anywhere in the berth.

From what has been said, it will appear that defendant's charges, 19, 21, 34 and 35 should have been given. Charge 26 was an improper instruction, in its last branch, in which it is said, "If they [the jury] find from the evidence, that the ring could be worn in the usual manner, the defendant [plaintiff] was guilty of contributory negligence in not keeping it on his finger, and there can be no recovery for its loss." The proposition asserted is, if one wears a ring on a sleeper, which he had been accustomed to wearing on his finger, and should take it off at night, and put it in his pocket-book, and the book containing the ring should be stolen from his berth, that this would be contributory negligence on his part, disentitling him to recover, although the theft occurred from the negligence of the defendant,—a proposition finding no support in law or reason.

Charge 28 requested by plaintiff asserts generally, a correct principle of law. If the defendant apprehended that it was misleading in that it did not limit the duty of the company in the care to be taken by it of such property, as, under the rules stated, a passenger may properly carry with him on a sleeper, an explanatory charge should have been requested by it.

It is well settled that the burden of proof as to contributory negligence, is in all cases on the defendant, unless the plaintiff's own evidence established it.—*B. M. R. Co. v. Wilmer*, 97 Ala. 166; *M. & E. R. Co. v. Chambers*, 97 Ala. 338; *K. C., M. & B. R. Co. v. Crocker*, 95 Ala. 428; *McDonald v. M. Street R. Co.*, 110 Ala. 161, 175-6. And, in civil cases, as we have heretofore held, when the evidence is equally balanced, the verdict of the jury must be against the party on whom rests the burden of proof; but a charge asserting that the jury must find according to the preponderance of the evidence is erroneous, for the reason that preponderance may not convince the minds of the jury. The measure or weight of proof, to justify a verdict based upon it as to any material fact is, that it shall reasonably convince or satisfy the minds of the jury that the fact exists.—*Vandeventer v. Ford*, 60 Ala. 610; *Life Asso. v. Neville*, 72 Ala.

[Nashville, Chattanooga & St. Louis Railway v. Hobbs, et al.]

517; *Rowe' v. Baber*, 93 Ala. 422; *Glover v. Gentry*, 104 Ala. 222.

For the errors indicated, let the judgment be reversed and the cause remanded.

Reversed and remanded.