# Cooney *v.* Pullman Palace Car Co.

### *Action for Damages Against Sleeping Car Co.*

1.  *Sleeping car company; when liable to passenger.*—It is the duty of a sleeping car company to use reasonable care to guard a passenger using one of its cars from loss by theft or otherwise while he is asleep; and if through want of such care his personal effects are stolen or lost the company is liable.

2.  *Same; for what liable.*—The articles for the loss of which a sleeping car company may be made liable are limited to clothing, ornaments and such effects as are usually carried by travelers in their hands, together with a sum of money sufficient for the expenses of the journey in which one is engaged; a pistol cannot be included.

3.  *Standard of value; what is.*—The standard of value of articles stolen or lost is the market value where they have such value, otherwise the actual loss in money which the owner would sustain by being deprived of the articles specially adapted to the use of himself or family.

APPEAL from the City Court of Birmingham.

Tried before the Hon. W. W. WILKERSON.

R. L. Cooney brought this suit to recover damages of the defendant, a sleeping car company, for loss of personal effects from the car in which he was sleeping. The case was tried without a jury and judgment was given for the defendant. The facts are sufficiently stated in the opinion. Reversed and rendered.

JOHN W. TOMLINSON, for appellant, cited, *Pullman Car Co. v. Lowe,* 26 Am. St. R'p'ts, p. 325; *Voss v. Wagner Palace Car Co.,* 44 N. E. 1010; *Voss v. Cleveland G. C. & St. Louis R. R.,* 43 N. E. 20; 42 Mo. Appeals, 134.

WALKER, PORTER & WALKER, *contra,* contended that the burden of negligence was on the appellant.—3 Woods Ry. Law 1446; 21 Am. & En. R. R. Cases 443; Howards Practice 154; *Chrystal Pallace v. Vanderpool,* 16 B. Monroe 302; Elliott on R. R., Vol. 4, Secs. 1616-1627; Huthison on Carriers, 2 Ed., Sec. 6172; *Dargin v. Pullman Car Co.,* 2 Wilson 607.

DOWDELL, J.—In the recent case of *Pullman Palace Car Company v. Adams,* 24 So. Rep. 925, 120 Ala. 581, decided by this court, it was said: "The rule now seems to be well settled that sleeping car companies are not held to the responsibility of common carriers and inn-keepers. Many reasons for this distinction will be found stated in the text-books and decisions, and nowhere more fully, perhaps, than in *Blum v. Car Co.,* 1 Flip. 500, Fed. Cas., Vol. 3, Case 1, 574;" citing Hutch. Carr. 617d; 22 Am. & Eng. Ency. Law, 797 where the authorities may be found collated. The writer of this opinion is, however, not very profoundly impressed with the soundness of reasoning in the case of *Blum v. Car Co., supra.* In the case above referred to of *Car Co. v. Adams,* the case of *Lewis v. Car Co.,* 143 Mass. 267, is cited with approval, wherein it was said by Morton, C. J.: "A sleeping car company holds itself out to the world as furnishing safe and comfortable cars, and, when it sells a ticket, it impliedly stipulates to do so. It invites passengers to pay for, and make use of, its cars for sleeping, all parties knowing that, during the greater part of the night, the passenger will be asleep, powerless to protect himself or to guard his property. He cannot like the guest of an inn by locking the door, guard against danger. He has no right to take any such steps to protect himself in a sleeping car, but, by the necessity of the case, is dependent upon the owners and officers of the car to guard him and the property he has with him from danger from

24

thieves or otherwise. The law raises the duty on the part of the car company to afford him protection. While it is not liable as a common carrier or as an inn-keeper, yet it is its duty to use reasonable care to guard the passengers from theft, and if, through want of such care, the personal effects of a passenger such as he might reasonably carry with him are stolen, the company is liable for it. Such a rule is required by public policy, and by the true interests of both the passengers and the car company, and the decided weight of authority supports it."

It becomes a question in the present case as to whether the defendant car company exercised reasonable care to guard and protect plaintiff's property from loss by theft or otherwise, while a passenger in defendant's sleeping car. The evidence on the part of the plaintiff made a *prima facie* case in his behalf. Does the evidence of the defendant overcome this *prima facie* case by showing the exercise of that reasonable care for plaintiff's property, that he was entitled to, and such as would exempt the defendant from liability?

The first witness introduced by the defendant, was Cartwright, the waiter, who took plaintiff's hand-baggage when he entered the sleeping car. The testimony of this witness coincides with plaintiff's, as to the manner of plaintiff's entering the car, and the disposition of his satchels, except as to the particular place where Cartwright deposited the satchels in the car, and we think under the circumstances this was an immaterial conflict. The other two witnesses of the defendant, the car conductor and the porter, testified that the car was under the control of the conductor, porter and waiter, and that it was not customary or usual to have any more persons in control of a sleeping car. That it is the duty of each of these three employés to guard and watch said car at all times, some one to be on guard at all times. That some one of these employés was on guard and watch all that night. That while on guard he could see the full length of the aisle in the car, and between all the berths on the right and left sides. That no person boarded or left said car between Mobile and Montgomery. That several people got out of said car at Montgomery, some of

[Cooney v. Pullman Palace Car Co.]

them having valises in their hands as they got off the car, though none of the employés knew of the satchel being lost until plaintiff inquired for the same above Montgomery, when he got out of his berth.

It is evident from the testimony that the satchel was stolen or lost, and it was not stolen or lost between Mobile and Montgomery, but it is a fair and reasonable inference from the testimony that it was stolen or lost upon the arrival of the train at Montgomery. These last two witnesses tell of the duties of the employés, and in a general way how they are and were performed, and yet they wholly fail to show what care if any was exercised at Montgomery where a number of passengers got off said car, some with satchels in their hands, to prevent a theft, or the taking of plaintiff's satchel through mistake, by any of those leaving the car. The witness, Cartwright, knew plaintiff's satchel, for he remembered it and could describe it at the time of the trial of this case. He was evidently up and present at the time the several passengers left the car at Montgomery, for he says that the person who occupied the lower berth beneath the one occupied by plaintiff, left the car in a few minutes after the train reached Montgomery. Neither of the defendant's witnesses say, that the plaintiff's satchel was or was not taken away by some one of the persons, who left the car at Montgomery with satchels in their hands; nor do they pretend to say that they or either of them exercised any care whatever in this regard. Can it be denied, that reasonable and proper care on the part of defendant's employé, Cartwright, who knew plaintiff's satchels, would have prevented its loss through any one of those leaving the car at Montgomery? After a careful and fair consideration of defendant's evidence, we do not think it shows that reasonable exercise of care and protection to the plaintiff and his property that the law requires.

The next question is, as to what articles of the property lost, the defendant should be held liable for. The rule as laid down in the case of *Pullman Palace Car Co. v. Adams, supra,* supported by the authorities cited in that case, seems to limit the responsibility of the car company to the clothing, ornaments and such articles

as are usually carried by travelers in their hands, together with a sum of money sufficient for the expenses of the journey in which one is engaged. Under this authority no claim could be made for the pistol, the same being an article not necessary to the journey. The evidence on the part of the plaintiff was that he boarded the car at Mobile for Birmingham, the latter place being his home and destination, and also, that he was general traveling agent of the New York Life Ins. Co. and that it was usual for persons having much traveling to do, to carry with them mileage tickets; this being the undisputed proof he was entitled to recover for the loss of the tickets. For the value of the remaining articles, to-wit, the opera glasses, glass and brass compass, razor and strap and accoutrements, and nasal syringe with accompaniments, being such articles as add and contribute to the comfort, pleasure and enjoyment of the travelers, and such as are not unusual to be carried by hand while traveling, together with the satchel which contained the same, the plaintiff was also entitled to judgment.

It is insisted that the market value of the articles lost. is the only criterion of value, and the plaintiff's evidence failing to show any market value he cannot recover. Where it is shown that the property in question has a market value, then that is the proper standard of value; but if the property be not shown to be marketable the rule would not apply. It is said in Hatchinson on Carriers, section 770b, "The general rule of damages in trover, and in contract for not delivering goods, undoubtedly is the fair market value of the goods. But this rule does not apply when the article sued for is not marketable property. "In *International Railway Co. v. Nicholson*, 61 Texas 550, it is said: "The lost articles seemed to be of such a character, viz., second-hand clothing, books and table furniture which had been used by the plaintiff, that they could not be said to have to him a value at one place different from what they possessed at another. He could hardly have supplied himself in the market with goods in the same condition and so exactly suited to his purposes as were those of which he had been deprived. As compensation for the actual loss is the fundamental principle upon which this measure

[Elyton Co. v. Hood.]

of damages rests, it would seem that the value of such goods to their owner would furnish the proper rule upon which he should recover. Not any fanciful price that he might for special reasons place upon them, nor, on the other hand, the amount for which he could sell them to others, but the actual loss in money he would sustain by being deprived of articles so specially adapted to the use of himself and his family." See also the case of *Denver Railroad Co. v. Frame*, 6 Col. 385. The plaintiff in the present case testified to the value of the articles lost, and there being no evidence that the articles had any market value, this evidence of value by the plaintiff was sufficient.

The judgment of the city court will be reversed, and judgment here rendered in favor of appellant for forty-six and 25-100 dollars, that being the total value of the articles lost and for which the defendant appellee is held responsible, together with interest on the same from the 15th day of November, 1895.