KATHARINE HOOKER *vs.* BOSTON AND MAINE RAILROAD.

Middlesex.    March 24, 27, 1911. — September 6, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Carrier*, Of passengers: liability for loss of personal baggage. *Interstate Commerce Act. Damages*, Limitation of liability. *Contract*, What constitutes.

The interstate commerce act does not change the common law rule prevailing in this Commonwealth, that a passenger on a railroad is not bound by a limitation of liability of the corporation operating the railroad as to the amount in value of personal baggage which will be carried upon a passenger ticket without extra charge and for which the corporation will be liable in case of loss, unless the passenger agreed to such limitation by express contract or by assent to a known regulation.

It here was assumed that the subject matter of passengers' baggage in interstate travel is within the control of Congress.

The fact, that a railroad corporation has inserted in its schedules of rates, fares and charges, filed and published under the orders of the interstate commerce commission, a statement that "baggage liability is limited to personal baggage not to exceed $100 in value for a passenger presenting a full ticket . . . unless a greater value is declared and stipulated by the owner and excess charges thereon paid at time of taking the baggage," does not make such limitation of liability a part of the established rate filed with the commission and thus binding on passengers whether they knew of it or not.

TORT by a passenger on a train of the defendant from Boston to Sunapee Lake Station in the State of New Hampshire on September 15, 1908, for loss of personal baggage, amounting to about $2,000 in value, checked for transportation on said train and destroyed by fire at said station while in the hands of the defendant as a common carrier.    Writ dated October 13, 1908.

The answer, as amended, set up the defense of limitation of liability which is stated in the opinion.    In the Superior Court the case was tried before *Harris*, J., without a jury.    The facts material to the questions raised are stated in the opinion.

The judge made the following findings of fact requested by the plaintiff:

"That the loss of the plaintiff's baggage was due to the defendant's negligence;

"That the defendant failed to prove that the plaintiff or any one acting for her had actual notice, until after the destruction

of her baggage, of the defendant's regulations limiting its liability ;

" That any reasonable person would infer from the outward appearance of the plaintiff's baggage, when tendered to the defendant for transportation, that the value largely exceeded $100 ;

" That there was no evidence that any more expensive or different mode of transportation was adopted for baggage, the value of which had been declared to exceed $100, than for other baggage ;

" That no inquiry was made by the defendant on receiving the plaintiff's baggage as to its value."

At the request of the defendant the judge found the facts in regard to the matters of defense which are stated in the opinion. The defendant, among other requests, asked for the following rulings :

" 2.   That the plaintiff cannot recover for the value of baggage exceeding $100 in value."

" 8.   That under the act of congress to regulate interstate commerce and the amendments thereof and the orders and regulations of the interstate commerce commission and the schedules of rates, fares and charges of transportation printed, published and filed by the defendant, the maximum limit of liability in this action is $100."

The judge found for the plaintiff in the sum of $2,133.04 ; and the defendant alleged exceptions.

*F. N. Wier*, (*L. T. Trull* with him,) for the defendant.

*S. Williston*, for the plaintiff.

RUGG, J.   The plaintiff, an interstate passenger of the defendant, claims damages in excess of $2,000 for loss of her baggage occurring through the negligence of the defendant.   The defense is that the liability of the defendant is limited to $100.   The grounds upon which that defense is predicated are these : The defendant had complied with all the provisions of the statutes of the United States known as the interstate commerce act and the orders of the interstate commerce commission, and among other matters had filed and published schedules of rates, fares and charges, including those in force respecting the stations between which the plaintiff was a traveller.   A part of the schedules relating to transportation of baggage was: " Regular Baggage

Service One Hundred Fifty Pounds of Personal Baggage not exceeding one hundred dollars in value, will be checked free for each passenger on presentation of a full ticket, and seventy-five pounds for a half ticket. . . . For Excess Value, the rate will be one-half of the current excess baggage rate per one hundred pounds for each one hundred dollars, or fraction thereof, of increased value declared. The minimum charge for excess value will be 15 cents. Baggage liability is limited to personal baggage not to exceed one hundred dollars in value for a passenger presenting a full ticket and fifty dollars in value for a half ticket, unless a greater value is declared and stipulated by the owner and excess charges thereon paid at time of taking the baggage." These provisions were filed with the interstate commerce commission and with the agent of the defendant at Boston, where the plaintiff's baggage was checked, and a notice to this effect was conspicuously posted near the defendant's Boston ticket office, and a further notice of limitation of value of baggage was likewise posted in its Boston baggage room. The plaintiff did not, in fact, know of this regulation, nor of any rule limiting the value of baggage to be carried without extra charge. She was not asked for the value of her baggage at the time of checking it or of purchasing her ticket.

The common law rule fixing the rights of the parties is not open to doubt. It is that respecting the transportation of baggage or merchandise a common carrier may relieve itself from many of the heavy responsibilities amounting to insurance cast upon it by the law. It may not exonerate itself, however, by regulation or by contract from liability for its own negligence, but it may make just and reasonable stipulations in good faith as to the value of the property entrusted to its care, and the amount for which it shall respond in case of loss, even though occurring through its own negligence; such stipulations must be brought home to the knowledge of the shipper through either a formal contract, or express or inferable notice, under circumstances warranting the assumption of actual assent. *Brown* v. *Eastern Railroad*, 11 Cush. 97. *Malone* v. *Boston & Worcester Railroad*, 12 Gray, 388. *Cox* v. *Central Vermont Railway*, 170 Mass. 129, 136. *Graves* v. *Adams Express Co.* 176 Mass. 280. *John Hood Co.* v. *American Pneumatic Service Co.* 191 Mass. 27.

*Brown* v. *Cunard Steamship Co.* 147 Mass. 58.   *Hill* v. *Boston, Hoosac Tunnel, & Western Railroad,* 144 Mass. 284.   *Graves* v. *Lake Shore & Michigan Southern Railroad,* 137 Mass. 33.   *Bernard* v. *Adams Express Co.* 205 Mass. 254.   *McKahan* v. *American Express Co., ante,* 270.   *Gardiner* v. *New York Central & Hudson River Railroad,* 201 N. Y. 387.   *Hart* v. *Pennsylvania Railroad,* 112 U. S. 331.   *The Majestic,* 166 U. S. 375.   *Cau* v. *Texas & Pacific Railway,* 194 U. S. 427.   *Arthur* v. *Texas & Pacific Railway,* 204 U. S. 505.   *New York Central & Hudson River Railroad* v. *Fraloff,* 100 U. S. 24, 27.   See *In the Matter of Released Rates,* 13 Interst. Com. Rep. 550, and *Herbeck-Demer Co.* v. *Baltimore & Ohio Railroad,* 17 Interst. Com. Rep. 88. See cases collected in 4 Elliott on Railroads, (2d ed.) § 1510. This rule prevails commonly in the States of the Union, except in Pennsylvania, (*Hughes* v. *Pennsylvania Railroad,* 202 Penn. St. 222,) Iowa, Kansas, Texas and Kentucky.   See 1 Hutch. on Carriers, (3d ed.) § 405, and cases cited.

It is recognized generally that a public notice restricting in any respect the common law liability of the carrier is not binding upon the shipper or passenger, even though known, unless assented to by him.   Ordinarily, such assent is not implied merely from knowledge, though this may be a significant circumstance, in the light of the requirements of good faith, in connection with others in warranting the inference of assent.   *New Jersey Steam Navigation Co.* v. *Merchant's Bank,* 6 How. 344, 382.   *Railroad Co.* v. *Manufacturing Co.* 16 Wall. 318, 329.   *Judson* v. *Western Railroad,* 6 Allen, 486.   *Buckland* v. *Adams Express Co.* 97 Mass. 124.   *Faulk* v. *Columbia, Newberry & Laurens Railroad,* 82 S. C. 369.   See cases collected in 4 Elliott on Railroads, (2d ed.) § 1501, and note.

The English rule is slightly more favorable to the carrier, and affirms the binding force of a notice of limitation, if the carrier has done all that is reasonably sufficient to give to the shipper knowledge of the limitation.   *Henderson* v. *Stevenson,* L. R. 2 H. L. (Sc.) 470.   *Richardson, Spence & Co.* v. *Rowntree,* [1894] A. C. 217.

It is plain that if the plaintiff's case rested at common law, the action of the Superior Court would stand, for the fact is expressly found that the plaintiff had no knowledge of the reg-

ulation limiting the value of baggage gratuitously carried by the defendant as a part of the transportation for each passenger.

It is earnestly argued by the defendant that the common law rule is abrogated as to this case, which involves a transportation between two States, by the federal interstate commerce act. U. S. St. February 4, 1887, c. 104; 24 U. S. Sts. at Large, 379. U. S. St. March 2, 1889, c. 382; 25 U. S. Sts. at Large, 855. U. S. St. February 10, 1891, c. 128; 26 U. S. Sts. at Large, 743. U. S. St. February 8, 1895, c. 61; 28 U. S. Sts. at Large, 643. U. S. St. February 19, 1903, c. 708; 32 U. S. Sts. at Large, 847. U. S. St. June 29, 1906, c. 3591; 34 U. S. Sts. at Large, 584.

It may be conceded that the subject matter of passengers' baggage in interstate travel is within the control of 'Congress, and any enactment by it would bind the parties. It is not contended that there is any specific regulation respecting it to be found in any act of Congress. The precise position of the defendant is that as the limitation of liability for baggage was filed and posted as a part of its schedules for passenger tariff, the limitation thereby became and was an essential part of its rate, from which under the interstate commerce law it could not deviate, and by which the plaintiff was bound, regardless of her knowledge of or assent to it. If the premise is sound, then the conclusion follows, for the public are held inexorably to the rate published, regardless of knowledge, assent or even misrepresentation. *Gulf, Colorado & Santa Fe Railway* v. *Hefley*, 158 U. S. 98. *Texas & Pacific Railway* v. *Mugg*, 202 U. S. 242. *Melody* v. *Great Northern Railway*, 25 So. Dak. 606.

The aim of the interstate commerce act has been stated to be to secure for all the public reasonable rates and equality of rates without discrimination or preference, and that subject to these two dominating purposes the carriers and the people are left to their common law freedom of making special contracts according to their interests and necessities. *Cincinnati, New Orleans & Texas Pacific Railway* v. *Interstate Commerce Commission*, 162 U. S. 184, 196, 197. *Interstate Commerce Commission* v. *Cincinnati, New Orleans & Texas Pacific Railway*, 167 U. S. 479, 493. *New York, New Haven & Hartford Railroad* v. *Interstate Commerce Commission*, 200 U. S. 361, 391. *Interstate Com-*

*merce Commission* v *Delaware, Lackawanna & Western Railroad,* 220 U. S. 235, 253.

Several expressions are to be found in decisions of the United States Supreme Court, which by themselves alone might be taken to indicate that whatever is posted and filed as required by the law thereby is called to the attention of the public, and binds everybody. See for example *Louisville & Nashville Railroad* v. *Mottley,* 219 U. S. 467, 476. *Armour Packing Co.* v. *United States,* 209 U. S. 56, 81. *Texas & Pacific Railway* v. *Cisco Oil Co.* 204 U. S. 449, 451. *Gulf, Colorado & Santa Fe Railway* v. *Hefley,* 158 U. S. 98, 101. But, without examining them in detail, it is apparent from the context that these phrases were intended only to emphasize the general proposition that under the interstate commerce act full publicity of the rates established by the carriers is required, and ample facility given to every interested member of the public to ascertain precisely what those rates are, and that these rates so established under the law are binding upon everybody, and cannot be modified or departed from. Their reasonableness cannot be tried out in an ordinary action in courts between shipper and carrier, but only by petition to the interstate commerce commission. *Texas & Pacific Railway* v. *Abilene Cotton Oil Co.* 204 U. S. 426. *Baltimore &. Ohio Railroad* v. *United States,* 215 U. S. 481. The binding force of the limitation as to amount of recovery in case of loss must stand, if it can stand at all, as being a part of the established rate when filed with the commission and with its officers, and thus binding upon all the travelling public without knowledge of their contents, and not upon the proposition that by being posted "in two public and conspicuous places in every depot" the public were constructively notified thereof. This follows from the decision in *Texas & Pacific Railway* v. *Cisco Oil Co.* 204 U. S. 449, 451, to the effect that such posting is not a condition precedent to the taking effect of the schedule, but that the rate becomes operative upon filing with the interstate commerce commission and furnishing copies to its officers, even though not publicly posted. It is to be noted also that this is not a case where the interstate commerce commission has established a limitation of value of baggage to be carried free as a part of a rate.

The pivotal question then is whether the limitation as to liability for loss of baggage transported without extra charge is a part of the passenger rate or tariff, or whether it is a subsidiary incident to the main matter of fare.  We are of opinion that it is not an essential element in the fare for transportation of passengers.  Limitation of liability by contract in case of loss has not been abolished by the interstate commerce act.  Reasonable agreements in this regard are upheld.  This is a subject, about which the policy established in the several States prevails, since as well as before the enactment of the federal statutes. Hence an agreement inserted in a bill of lading limiting liability in case of loss has been held invalid if contrary to the law of a State, even though made the basis of a contract of interstate carriage.  In *Pennsylvania Railroad* v. *Hughes*, 191 U. S. 477, a horse was shipped from Albany in the State of New York to Cynwyd, in the State of Pennsylvania, and was injured by a connecting carrier in the latter State.  The bill of lading stated that the freight was to be paid at the lower published rate " upon the express condition that the carrier assumes liability . . . to the extent only of the following agreed valuation, upon which valuation is based the rate charged for the transportation . . . and beyond which valuation neither the said carrier nor any connecting carrier shall be liable in any event."    The valuation stated was not exceeding $100.    Under the law of Pennsylvania, such a limitation was invalid, and a verdict for the owner for $10,000 was sustained in the State court.    Upon error to the State court the point was clearly raised that this agreement in the bill of lading was within the protection of the federal interstate commerce clause and act.    But it was said by the court, through Mr. Justice Day, after summarizing the requirements of the interstate commerce act, at p. 488, " We look in vain for any regulation of the matter here in controversy. There is no sanction of agreements of this character limiting liability to stipulated valuations, and, until Congress shall legislate upon it, is there any valid objection to the State enforcing its own regulations upon the subject, although it may to this extent indirectly affect interstate commerce contracts of carriage ? "    After a review of the cases, it is said further, at p. 491: " The principle recognized is that in the absence of

congressional legislation upon the subject, a State may require a common carrier, although in the execution of a contract for interstate carriage, to use great care and diligence in the carrying of passengers and transportation of goods, and to be liable for the whole loss resulting from negligence in the discharge of its duties. We can see no difference in the application of the principle based upon the manner in which the State requires this degree of care and responsibility, whether enacted into a statute or resulting from the rules of law enforced in the State courts. The State has a right to ·promote the welfare and safety of those within its jurisdiction by requiring common carriers to be responsible to the full measure of the loss resulting from their negligence, a contract to the contrary notwithstanding." To the same point are *Chicago, Milwaukee & St. Paul Railway* v. *Solan,* 169 U. S. 133, *Martin* v. *Pittsburg & Lake Erie Railroad,* 203 U. S. 284, and *Latta* v. *Chicago, St. Paul, Minneapolis & Omaha Railway,* 97 C. C. A. 198, 202. It is true that in none of these cases, so far as appears in the reports, was the limitation of liability inserted in the schedules as filed and posted under the interstate commerce act, but that appears to us to be an immaterial circumstance. The rate was stated in the several contracts of carriage to be based on the value given. It would be hard to conceive of a rate more plainly bound up with the limitation. It is the substance of the matter and not the form which is decisive. A rate established by a carrier and stated in its schedule as filed to be dependent upon certain limitations of liability, can have no higher or different character than a like rate conditioned by a contract upon the same limitation of liability. The carrier cannot make something a rate merely by calling it by that name. It cannot convert that, which is in its essence a subject for regulation according to the law or policy of the several States, into the rigidity of a rate protected by the federal laws, simply by putting it into a schedule which is called a schedule of rates and tariffs. The defendant seeks the protection of a federal statute. The decisions of the United States Supreme Court are of controlling authority in this respect. The cases we have cited seem to decide, in principle, that the limitation of liability invoked by the defendant is not one which is under the ægis of the interstate com-

merce act. The subject is one which is not so related to rates of transportation of passengers as to be a part of such a rate. It is governed by the law of the State where the contract of carriage is made and enforced. While this point has not been discussed to any extent, many decisions seem to be based upon the principle we have stated. See *Fielder & Turley* v. *Adams Express Co.* 69 W. Va. 138 ; *Miller* v. *Chicago, Burlington & Quincy Railroad,* 85 Neb. 458 ; *Windmiller* v. *Northern Pacific Railway,* 52 Wash. 613 ; *Louisville & Nashville Railroad* v. *Venable,* 132 Ga. 501; *Hasbrouck* v. *New York Central & Hudson River Railroad,* 202 N. Y. 363.

As we have pointed out, there is no doubt that by the common law of this Commonwealth the plaintiff was not bound by the limitation of liability of which she was wholly ignorant. She could have been restricted in right of recovery only by express contract or by assent to a known regulation.

The only other exception not expressly waived by the defendant has become immaterial in view of the ground upon which this judgment rests.

*Exceptions overruled.*