## Louisville & Nashville Railroad Company v. Miller.

(Decided January 7, 1914).

### Appeal from Warren Circuit Court.

1. Railroads—Interstate Commerce Act—Shippers.—As to interstate shipments, the Carmack Amendment of June 29, 1906, to the Inter-

state Commerce Act of 1887 supersedes the Kentucky doctrine that the shipper is not bound by a recital of value in his contract of shipment.

2. Railroads—Interstate Commerce Act—Action for Lost Baggage.— Under the Carmack Amendment of June 29, 1906, to the Interstate Commerce Act of 1887, a carrier may, with the consent of the Intrestate Commerce Commission, adopt a regulation by which it will not be liable to an amount exceeding $100.00 for the baggage of an interstate passenger lost through the carrier's negligence, unless a greater value is placed upon the baggage by the carrier and an extra charge paid for the valuation in excess of $100.00.

3. Damages—Measure of.—The general rule is, that in cases of loss of goods for which a carrier becomes liable, the measure of damage is the value of the goods at the point of destination; but this general rule is not applicable in every case and to every class and species of personal property.

4. Carriers—Lost Baggage—Measure of Damages.—The measure of damage for a loss of baggage consisting of clothing and wearing apparel is the value of the clothing for use by the owner.

SIMS & RODES, CHAS. H. MOORMAN and BENJAMIN D. WARFIELD, for appellant.

BRADBURN & BASHAM for appellee.

Opinion of the Court by Judge Miller—Reversing.

In December, 1911, the appellee was a passenger upon appellant's train from Nashville, Tennessee, to Bowling Green, Kentucky. When she checked her trunk, appellant's agent gave her a trunk check bearing this endorsement upon its back:

"It shall be the duty of every passenger tendering baggage for transportation to declare the value thereof without inquiry by the carrier or any agent or employee thereof. Unless a greater sum is declared by passenger according to the form prepared by checking carrier and charges paid for increased value at the time of the delivery to carrier, the value of the baggage or articles belonging to or checked for an adult passenger shall be held to have been declared and agreed by him to be and shall be deemed to be, not in excess of $100.00, and the value of the baggage or articles belonging to or checked for a child of half fare age, shall be held to have been declared and agreed by him to be, and shall be deemed to be, not in excess of $50.00."

The trunk having been lost upon the journey, appellee brought this action against appellant for $516.00 damages; and, having recovered a judgment for $275.00, the

company appeals, and the plaintiff prosecutes a cross-appeal.

Appellant's only complaint is that the court erred in sustaining a demurrer to its answer; while appellee's only complaint upon her cross-appeal is that the court, by its instruction, gave an erroneous measure of damages.

1. In appropriate terms, the answer alleged that appellee, on the occasion mentioned, was an interstate passenger upon an interstate train, coming from Tennessee to Kentucky; that her trunk constituted interstate baggage; that in its joint baggage tariff, which became effective September 1, 1911 with the approval of the Interstate Commerce Commission, and under which tariff appellant was authorized to handle, and did handle the appellee's baggage, it was provided by Rule 17, thereof that, "it shall be the duty of every passenger tendering baggage for transportation to declare the value thereof without inquiry by the carrier, or any agent or employee thereof"; and further that, by section (b) of Rule 17, it was provided that, "unless a greater sum is declared by the passenger according to form prescribed by checking carrier, and charges paid for increased valuation at time of delivery to carrier, or if delivery to the carrier be made at a non-agency station, the value of the baggage or articles belonging to or checked for an adult passenger, shall be held to have been declared and agreed by the party, and shall be deemed to be not in excess of one hundred ($100.00) dollars, and the value of the baggage or articles belonging to or checked for a child of half fare age, shall be held to have been declared and agreed by the party, and shall be deemed to be, not in excess of fifty ($50.00) dollars;" and that it was further provided by section (o) of Rule 17 of said tariff that, "no carrier, party hereto, shall be liable in excess of the proportion that the value declared bears to the actual value, if greater."

The answer further alleged that the joint baggage tariff referred to, was posted in its passenger depot at Nashville, as required by law; that appellee failed to declare a value on her baggage, and that the check given to plaintiff contained the endorsement above set out. Appellant relied upon said regulation and the check given, with the endorsement above referred to, and the plaintiff's failure to declare a value on her baggage in excess of one hundred dollars, in bar of the plaintiff's

right to recover more than one hundred dollars in any event, and conceded its liability only to the extent of fifty dollars.

The question for decision, therefore, is this: Did the acceptance of appellee's trunk by the appellant, and the delivery to her of the check, endorsed as above indicated, conceding that it was regularly issued under and by virtue of its joint baggage tariff, have the effect of reducing appellant's liability to a maximum of one hundred dollars?

This defense is made under the Interstate Commerce Act of February 25, 1887, as amended June 29, 1906, and generally known as the Carmack Amendment.

There can be no doubt, that as to interstate shipments, the Carmack Amendment supersedes the Kentucky doctrine announced under section 196 of the Kentucky Constitution, that the shipper is not bound by a recital of value in his contract of shipment, but may show and recover his full loss. In the application of this federal statute we are, therefore, controlled by the construction given it by the United States Supreme Court.

And since this federal statute has been construed in Adams Express Co. v. Croninger, decided January 6, 1913, and reported in 226 U. S., 491, 44 L. R. A. (N. S.) 257, we are to look to that opinion for an authoritative interpretation. It was there held that Congress had so manifested a purpose in the Carmack Amendment to the Hepburn Act, to take control of the subject of the liability of a common carrier for the loss of, or damage to, an interstate shipment, as to supersede all State regulations upon the same subject, including the provisions of State Constitutions or laws invalidating contracts limiting the carrier's liability to agreed values; and that therefore the validity of any stipulation in a contract for an interstate shipment which undertakes to limit the carrier's liability, is a federal question, to be determined, both by the state and federal courts under the common law as finally declared by the United States Supreme Court.

In the Croninger case, *supra,* the court said:

"That the legislation supersedes all the regulations and policies of a particular state upon the same subject results from its general character. It embraces the subject of the liability of the carrier under a bill of lading which he must issue, and limits his power to exempt himself by rule, regulation, or contract. Almost every detail

of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulation with reference to it. Only the silence of Congress authorized the exercise of the police power of the state upon the subject of such contracts. But when Congress acted in such a way as to manifest a purpose to exercise its conceded authority, the regulating power of the state ceased to exist. Northern P. R. Co. v. Washington, 222 U. S., 370, 56 L. Ed., 237, 32 Sup. Ct. Rep., 160; Southern R. Co. v. Reid, 22 U. S., 424, 56 L. ed. 257, 32 Sup. Ct. Rep., 140; Second Employers' Liability Cases (Mondau v. New York, N. H. & H. R. Co.), 223 U. S. 1, 56 L. Ed., 327, 38 L. R. A. (N. S.), 44, 32 Sup. Ct. Rep., 169.

"To hold that the liability therein declared may be increased or diminished by local regulation or local views of public policy will either make the provision less than supreme, or indicate that Congress has not shown a purpose to take possession of the subject. The first would be unthinkable, and the latter would be to revert to the uncertainties and diversities of rulings which led to the amendment. The duty to issue a bill of lading, and the liability thereby assumed, are covered in full; and though there is no reference to the effect upon state regulation, it is evident that Congress intended to adopt a uniform rule and relieve such contracts from the diverse regulation to which they had been theretofore subject."

It is further provided in the joint baggage tariff above referred to, that if the baggage offered is declared by the shipper to be of greater value than one hundred dollars for an adult passenger, the passenger is to be charged for such excess according to the table of excess valuation rate shown in Rule 36 of said tariff. The right of the carrier to receive compensation commensurate with the risk involved; to protect himself from fraud and imposition by reasonable rules and regulations, and to agree on a rate proportionate to the value of the property transported, was expressly recognized in the opinion in the Croninger case.

The circuit court was of opinion, however, that a distinction must be made between a contract for the transportation of an article for a certain charge, based upon value, and a contract for the carriage of personal baggage, free of charge, and as an incident to the purchase of a railroad ticket, the cost of which is unaffected by the amount or value of the baggage to be transported;

that in all the cases that had called for a construction of the interstate commerce act, the question had been one of rates; and that as the case at bar did not involve a question of rates, the cases referred to were not controlling. This conclusion was reached by proceeding upon the theory that there is no charge for transporting baggage not exceeding a certain weight; that baggage is carried free of charge, and as an incident to the contract for the transportation of the passenger—the owner of the baggage; and that the rate or the charge, for the carrying of a passenger, is not affected by the amount of his baggage, nor, indeed, by the fact that he has no baggage. This theory finds support in Hooker v. Boston & Maine R. R. Co., 209 Mass., 598, 23 Ann. Cas., 669, decided September 6, 1911, by the Massachusetts Supreme Judicial Court, and is based upon the idea that the federal act applies to the interstate carriage of freight for compensation, but not to a like carriage of baggage for which, it is claimed, no charge is made.

We cannot, however, accept this as a correct view of the law.

The Carmack Amendment, in so far as it is material to the consideration of this case, reads as follows:

"That any common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered, or over whose line or lines such property may pass; and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed: Provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law."

Baggage is property within the terms of the statute; and that the transportation of persons from one state to another is interstate commerce as fully as the like transportation of property, and as much within the regulative power of Congress, clearly appears from the "White Slave Traffic Act" cases. See Hoke v. United States, 227 U. S., 308.

Without further discussion, we conclude that the scope of the opinion in the Croninger case is sufficiently broad to cover a shipment of baggage in connection with, and as a part of the carriage of the passenger. To fix passenger rates, and provide for the carrying of a minimum amount of baggage as a part of the fare, is but an exercise of the right of the carrier to fix the rate for carrying the baggage; and, that being true, it follows that the carrier can, with the consent of the Interstate Commerce Commission, charge for baggage in excess of the minimum weight. Adams Express Co. v. Croninger, *supra.* We see no escape from this conclusion; and, that being true, the case at bar comes squarely within the provision of the Carmack Amendment.

It is proper to say that the case of Hooker v. Boston & Maine R. R. Co., 209 Mass., 598, 23 Ann. Cas., 669, was decided on September 6, 1911, before the Croninger case was decided.

The circuit court erred in following that case, and in sustaining the demurrer to the answer.

2. In defining the measure of plaintiff's damages, the court instructed the jury as follows:

"No. 1. The jury will find for the plaintiff the reasonable and fair market value of the articles contained in plaintiff's trunk at the time the same was delivered to the defendant at Nashville, Tenn., to be sent to Bowling Green, Kentucky, the amount, however, not to exceed the sum claimed in the petition, to-wit: $516.00."

Appellee insists that this instruction was wrong, and that the court should have instructed the jury that her measure of damage was what it would have cost her to supply the lost clothing and wearing apparel.

In 6 Cyc., 676, the rule is stated as follows:

"In general the measure of damage for loss of baggage is the value thereof, without regard to extra expense incurred on account of such loss, unless it was within the contemplation of the parties; and the owner cannot recover for expense of searching for it in addition to its value, nor attorney's fees in bringing the action. But the value of personal baggage is to be determined by what it is worth to the owner, and not what it would bring on the market."

See Cooney v. Pullman Palace Car Co., 121 Ala., 368, 53 L. R. A., 690; Fairfax v. N. Y., C. & H. R. R. Co., 73 N. Y., 167, 29 Am. Rep., 119; Turner v. R. R. Co., 75 S. C., 58, 7 L. R. A. (N. S.), 88; St. L. & S. F. R. R. Co., v.

Dickerson, 39 Okla., 386; G. H. & S. A. R. R. Co. v. Fales, 33 Tex. Civ. App., 461.

In Fairfax v. N. Y., C. & H. R. R. Co., *supra*, the action was brought to recover the value of a portmanteau and its contents, which had been lost through the negligence of the railroad company. In sustaining the ruling above announced, the Court of Appeals of New York said:

"The court did not err in charging the jury that the plaintiff was entitled to recover the full value of the clothing for use to him, in New York, and not merely what it could be sold for in money. The clothing was made to fit plaintiff, and had been partly worn. It would sell for but little, if put into market to be sold for second hand clothing, and it would be a wholly inadequate and unjust rule of compensation to give plaintiff, in such a case, the value of the clothing thus ascertained. The rule must be the value of the clothing for use by the plaintiff. No other rule would give him a compensation for his damages. This rule must be adopted, because such clothing cannot be said to have a market price, and it would not sell for what it was really worth."

It is true, the general rule is, that in cases of loss of goods, for which a carrier becomes liable, the measure of damage is the value of the goods at the point of destination; but this general rule is not applicable in every case, and to every class and species of personal property. The rule applies more especially to goods shipped by a merchant in the ordinary course of commercial traffic, where a profit is expected to be realized from a sale at the point of destination, at a price above the cost price at the place of shipment. But ordinary wearing apparel does not come within this general rule. It is not held for sale, and if sold, it could be sold only as second hand clothing, and bring but comparatively little. In other words, a coat which one has had made to fit him, would not fit another man; and while it would be worth $25.00 to the owner, it would not be worth half that sum to any one else.

Furthermore, ordinary wearing apparel, although not made to order, and worn only a few times, is worth much more to the owner than its market value as second hand clothes. The value of personal wearing apparel of daily use, carried on the journey, is not determinable by the market. No two sets of second hand effects of this kind

are in the same condition; and therefore, no standard of market value exists.

G. H. & S. A. Ry. Co. v. Fales, 33 Tex. Civ. App., 461; Wells-Fargo Co. v. Williams (Tex.), 71 S. W., 314; Railway Co. v. Frame, 6 Colo., 385; McMahon v. City of Dubuque, 107 Iowa, 62; 70 Am. St. Rep., 143.

In Int. & G. N. Ry. Co. v. Nicholson, 61 Tex., 550, the rule in cases of this character was stated as follows:

"As compensation for the actual loss is the fundamental principle upon which this measure of damages rests, it would seem that the value of such goods to their owner would furnish the proper rule upon which he should recover. Not any fanciful price that he might, for special reasons, place upon them, nor, on the other hand, the amount for which he could sell them to others, but the actual loss, in money, he would sustain by being deprived of articles so specially adapted to the use of himself and his family."

Clearly, therefore, the general rule does not apply here; and that in cases of this character the loser's measure of damage is the value of the clothing for use by the owner. Any other rule would not compensate the owner for his loss. The market value rule applied by the court was erroneous. It should have given an instruction as above indicated.

Reversed upon both original and cross appeal.