## Robinson, etc. v. Louisville & Nashville Railroad Company.

(Decided October 13, 1914.)

### Appeal from Lincoln Circuit Court.

1. Carriers—Shipment of Live Stock—Action for Loss—Tariff Rates —Interstate Commerce.—In an action for damages for loss of interstate shipment of live stock while in transit, the evidence shows that the shippers accepted a freight rate which limited the recovery in the event of injury to $100.00 for each horse or mule. Held, the instruction complained of properly limited the recovery to $100 for each mule as stipulated in the bill of lading.

2. Carriers—Shipment of Live Stock—Notice of Tariff Rates—Under Interstate Commerce law the shipper, as well as the carrier, is bound to take notice of the filed tariff rates, and so long as they remain operative are conclusive as to the rights of the parties, in the absence of facts or circumstances showing an attempt at rebating or false billing.

3. Carriers—Shipment of Live Stock—Evidence—The statement in evidence of the veterinary that in his opinion the mules died from natural causes did not prejudice plaintiff's case because there were facts tending to show that they died from such cause—colic, due to negligence in not properly watering and feeding.

J. B. PAXTON for appellants.

BENJAMIN D. WARFIELD, C. H. MOORMAN and K. S. ALCORN for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

The appellants, Robinson and Shanks, were buyers and shippers of horses and mules. On October 25th, 1912, they shipped a mixed car of horses and mules from Stanford, Kentucky. The car was consigned to Columbus, Georgia. They accepted and subscribed to a bill of lading, routing the shipment over appellee's line to Atlanta, Georgia, and thence to Columbus, over the Southern Railway. The bill of lading stipulated that, the shipment being made on the lesser of two established freight rates, the damage recoverable in the event of injury was limited to $100 for each horse or mule.

The shipment was on the road six days, while ordinarily only three days were required. Two mules died in Atlanta, and plaintiffs allege that when the remainder reached Columbus, they were almost famished, and their salable value damaged at least $20 per head. They brought this action to recover of the appellee company $905 for the whole damage sustained. The damage was itemized as follows: Two mules at $200 each; $20 to each head of stock; and $25 cost of extra feeding in transit.

The appellee, by answer, denied any negligence on its part, and, also, set up the fact that it was a common carrier engaged in interstate shipments, and that such shipments were subject to the provisions of the act of Congress commonly known as the "Interstate Commerce Act," and the several amendments thereto, and that this shipment of stock was of such interstate character. It is further shown by the original and amended answers, that the appellee before said shipment was made, had, as required by the Act of Congress, and the rules and regulations of the Interstate Commerce Commission, placed on file with said commission a schedule of freight tariffs for live stock, between Stanford, Kentucky, and Atlanta, Georgia, its terminus with respect to this shipment, and had filed and kept open to public inspection, at its office in Stanford, schedule showing rates for live stock between Stanford and Atlanta, and that said schedule showed that it had two freight rates for such transportation between said points, one rate being for stock shipped without any limit as to valuation, and a lesser rate for limited value on the stock, as in this case. It further alleges that it had no joint traffic arrangement with the Southern Railway to which it was to transfer the shipment at Atlanta. The answer further alleges

that the plaintiffs, appellants here, elected to avail themselves of the reduced rate and signed the bill of lading accordingly.

Under the instructions of the court, which were not criticised, except as to measure of damages, the jury returned a verdict for $200 in favor of appellants. Appellants complain that the court erred in limiting a recovery to $100 each for loss of the two mules, as stipulated in the bill of lading, or contract of shipment. Appellants concede that the Interstate Commerce Act, and the several amendments, particularly the Carmack amendment, have had the effect of superseding "all regulations and policies of any particular state upon the same subject." Adams Express Company v. Croninger, 226 U. S., 491. And to this extent has been abrogated section 196 of our Constitution, prohibiting a common carrier from contracting for relief against its common law liability. C., N. O. & T. P. Railway Co. v. Rankin. 153 Ky., 730.

But appellants insist that the limited liability contract offered as defense in this case, does not apply, because the shipper's attention was not called to it, and he did not voluntarily or knowingly consent to the reduced rate, or limit the value of his stock, in case of loss or damage.

In the case of Boston & Maine v. Katherine Hooker, 233 U. S., 97, the Supreme Court said:

"The knowledge of the shipper that the rate was based upon the value is to be presumed from the terms of the bill of lading, and from the published schedules filed with the commission."

In Kansas City Southern Railway Company v. Carl, 227 U. S., 652, the Supreme Court said:

The valuation the shipper declares determines the legal rate, where there are two rates based upon valuation. He must take notice of the rate applicable, and actual want of knowledge is of no excuse."

In M. K. & T. Railway v. Harriman, 227 U. S., 669, the Supreme Court said, that the shipper was compelled to take notice of the rate sheets contained in tariff schedules, "not only because referred to in the contract signed by them, but because they had been lawfully filed and published. * * *" When the carrier graduates its rates by value and has filed its tariffs showing two rates applicable to a particular commodity or class of articles, based upon a difference in valuation, the ship-

per must take notice, for the valuation "automatically determines which of the rates is the lawful rate."

In the still later case of A. T. & S. F. R. Co. v. Robinson, 233 U. S., 173, the Supreme Court in discussing the effect of the Carmack amendment to the Hepburn Act regulating Interstate Commerce, after citing the cases above referred to and numerous others, said:

"We regard these cases as settling the proposition that the shipper as well as the carrier is bound to take notice of the filed tariff rates, and that so long as they remain operative they are conclusive as to the rights of the parties, in the absence of facts or circumstances showing an attempt at rebating or false billing."

Appellant further says that these rulings of the Supreme Court do not apply here, because appellee had not filed a schedule of tariff rates between Stanford, Kentucky, and Columbus, Georgia. As already stated, the shipment in order to reach its destination, had to go over a connecting carrier, which the bill of lading shows was the Southern Railway. Appellee, by amended answer, alleged that it had no joint traffic arrangement with that railroad. This allegation was not disputed. Section 6, of the Interstate Commerce Act provides:

"That every common carrier subject to the provisions of this act shall file with the commission created by this act, and print and keep open to public inspection, schedules showing all the rates, fares and charges for transportation between different points on its own route and between points on its own route and points on the route of any other carrier by railroad, by pipe-line or by water *when through route and joint rate have been established*. If no joint rate over the through route has been established, the several carriers in such route shall file, print and keep open to public inspection, as aforesaid, the separately established rates, fares and charges applied to the through transportation."

The act further provides: That if any joint rate over the other route has been established, then the several carriers shall print and post their separately established rates.

It will thus be seen that appellant's argument in this respect is not well founded.

The next complaint is, that the court did not strike from the answer of a veterinary surgeon to a certain interrogatory, his opinion that the two mules died from "natural causes." The reading of the whole deposition

of this surgeon makes it clear that when he used the term "natural causes" he intended to make a distinction between a death by colic and one caused by violent injuries, wounds or bruises. From his description of the condition of the animals on autopsy, he thought the animals died of colic, or, as expressed by him in answer to the same and other questions, from "natural causes." This opinion of the surgeon did not prejudice appellant's case, because there were facts proven tending to show that death was from colic and was due to appellee's negligence in improperly feeding and watering the stock when in a famished condition. It is not contended that the instructions precluded recovery if death was so caused.

Appellant argues that the verdict of the jury was not nearly enough to compensate him for his damages, and is flagrantly against the evidence. It is true, that the $200 awarded was equal only to the amount allowed to be recovered for the two dead animals, and if that was the basis upon which the jury estimated the damages, then there was no allowance for damages to the other animals. The preponderance of the evidence, as it seems to us, showed that there was considerable damage to all the other animals, but there was evidence to show that there was no damage. This conflict in the evidence was for the jury to reconcile, and there being sufficient evidence to sustain their verdict, we do not feel justified in substituting our opinion of the facts for theirs.

The judgment is, therefore, affirmed.