### Adams Express Company v. Cook, et al.

(Decided February 9, 1915.)

Appeal from Shelby Circuit Court.

1. Carriers—Interstate Commerce—Contracts—Burden of Proof.—If an interstate carrier relies upon a contract which limits lia-

bility, the burden of proof is upon it to show that it has complied with the federal law by filing a graduated schedule of rates with the Interstate Commerce Commission, or else that the contract is just and reasonable, and that the shipper declared a value on the shipment in order to secure the lesser of two freight rates.

2. Carriers—Contracts—Notice—Pleading.—If the carrier pleads in bar a clause of the contract requiring the shipper to give 30 days' written notice of loss or damage, good pleading demands that it deny that notice was given, but such denial does not carry with it the burden of proving the negative. The shipper cannot recover unless he gave the notice and he must plead and prove that he did.

JOS. S. GRAYDON, LAWRENCE MAXWELL and WILLIS, TODD & BOND for appellant.

BEARD & PICKETT for appellees.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

Appellee Cook recovered judgment against the express company for $1,500 damages, the full amount claimed in his petition. The action was to recover for alleged injury to horses caused by delay in moving them to destination and negligence of appellant's servants in caring for them while in transit. The shipment was a carload of horses billed from Shelbyville, Kentucky, to Boston, Massachusetts, and was made upon a written contract. The petition was a simple one to recover damages for breach of this contract, and sought to recover the whole loss. From the petition it appeared that the writing was in possession of the company. The company answered, admitting the contract and filed it as an exhibit. Besides controverting the negligence and damage, it averred that is was a common carrier engaged in interstate commerce, and that the shipment in question was interstate, and that the contract limited liability for loss or damage to $100 for each horse, that being the value of each as declared by Cook; that it was in consideration of such declared value and liability so limited that the company agreed to carry at the rate stipulated, which was less than the rate charged for carrying horses of a greater value. It also plead and relied upon a clause in the contract absolving it from liability unless written notice of claim for loss or damage be given within thirty days after the loss or damage occurred. It was further alleged that Cook had failed

to give such notice within that time. It alleged that it had a right to make a contract limiting liability, and that it was binding on both the carrier and shipper, because it had prior thereto, as required by the Act of Congress and the rules and regulations of, the Interstate Commerce Commission, posted and filed a tariff or schedule of rates between the points in question, showing a scale of rates graduated according to value of horses shipped, and that, in order to obtain a lesser rate, Cook declared the value named and agreed to limit liability for loss to that extent.

Cook, by reply, admitted the contract and interstate character of the shipment, but controverted every other allegation of the answer, even the negative averment that he had not given written notice of the loss within thirty days. Then he plead affirmatively that he did give the notice, showing the manner of it, and in effect claiming that the facts which he alleged made the notice equivalent to a written notice. He especially denied that the appellant had any system of rates graduated according to value between Shelbyville and Boston, or that he declared any value on the horses, or that he had any choice of rates, or was given the opportunity of election between rates, or that he elected to ship at the alleged lowest rate applicable to a valuation of $100 per head.

With the issues thus joined the appellant introduced no proof to show that it had filed with the Interstate Commerce Commission, or posted, or maintained any tariffs or schedule of rates graduated or otherwise. Nor did Cook offer any evidence to show that he had given any notice of the claim for loss or damage. There was absolutely no proof offered by either party in regard to notice or graduated tariffs. Under these circumstances the court in instructing the jury ignored both propositions. In substance the jury were told that if they believed from the evidence that the horses were injured by the negligence of appellant or its servants, they should find for Cook such damage as he sustained by reason thereof, not exceeding $1,500, the amount claimed in the petition.

Appellant asked for a peremptory instruction, because there was no proof of notice, and, therefore, it claimed that under the contract Cook had not shown himself entitled to recover. The peremptory instruction

being refused, the court was asked to instruct the jury to limit recovery to $100 on each animal injured. As above indicated, this was also refused.

It was the view of the lower court that when the appellant failed to show that it had conformed to the interstate commerce law by filing its schedule of graduated rates with, and getting the approval of, the Interstate Commerce Commission, it, therefore, did not establish a right to make a contract limiting its common law liability as to the amount of damages recoverable, or a right to require notice of loss. In other words, the lower court held that, in the absence of such proof by appellant, the provisions of Section 196, Kentucky Constitution, were applicable and controlling in this case. Prior to the enactment of the interstate commerce law it was held in this State that such stipulations were in violation of Section 196 of the Constitution, which provides that no common carrier shall be permitted to contract for relief from its common law liability. O. & M. Ry. Co. v. Tabor, 98 Ky., 503; Brown v. I. C. R. R. Co., 100 Ky., 525.

But the Hepburn law and the Carmack amendment of 1906 manifest a purpose on the part of Congress, as has been frequently held by the United States Supreme Court, to take exclusive control of interstate commerce, including the liability of a common carrier for loss or damage to an interstate shipment, and to supersede all State legislation upon the same subject, including provisions of State constitutions, or laws invalidating contracts limiting the carrier's liability to agreed values. Adams Express Co. v. Croninger, 226 U. S., 491, 44 L. R. A. (N. S.), 257; K. C. So. Ry Co. v. Carl, 227 U. S., 652; M. K. & T. v. Harriman, 227 U. S., 669; C. B. & Q. Ry. v. Miller, 226 U. S., 517; C. St. P. M. & O. Railroad v. Latta, 226 U. S., 519; L. & N. v. Miller, 156 Ky., 677; Robinson v. L. & N., 160 Ky., 235; Howard & Callahan v. I. C., 161 Ky., 783.

We quote from the Croninger case with reference to the Acts of Congress referred to:

"That the legislation supersedes all the regulations and policies of the particular States upon the same subject results from its general character * * * almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject and supersede

all State regulations with reference to it. Only the silence of Congress authorized the exercise of the police powers of the State upon the subject of such contracts. But when Congress acted in such a way as to manifest a purpose to exercise its conceded authority, the regulating power of the State ceased to exist.''

It appears, therefore, that the Federal law is now the whole law regulating and controlling interstate shipments. It was enacted without condition or reservation, and its force and scope is not dependent upon acceptance of its terms by carrier or shipper. The law makes it their duty to comply with it. It is not within the power of either the shipper or carrier, by contract or otherwise, to choose between the application of the State and Federal laws. Intrastate shipments are governed by the law of the State, but as to interstate shipments the Federal law only applies, because it is self-operative, and has superseded all State law in that regard. The character of the shipment, that is, whether it is state or interstate, determines the question as to which law is applicable. St. L. S. F. & T. Ry. v. Seale, 229 U. S., 156; Pederson v. D. L. & W. R. R., 227 U. S, 146

Therefore, in an interstate shipment the validity of any stipulation in a contract which undertakes to limit the carrier's liability is a Federal question to be determined both by the State and Federal courts under the common law as finally declared by the United States Supreme Court  L. & N. v. Miller, 156 Ky., 677.

In applying to this case the common law as declared by the United States Supreme Court, the first question that arises under the pleadings and proof, is the validity of that clause of the contract limiting liability to $100 per head.

Section 6 of the Interstate Commerce Act makes it the duty of every common carrier engaged in interstate commerce to file with the commission, and to print and keep open to public inspection, a schedule showing all rates, fares and charges between the different points on its own route. It is admitted by the pleadings that the appellant is engaged in interstate commerce between Shelbyville and Boston, the points named in the contract of shipment. But, as already stated, it introduced no proof to show that it had filed with the commission, or had printed or kept open to public inspection any

schedule of rates. Failing to comply with the law in that regard, and there being an entire absence of proof to show that the shipper had any choice of rates, or that the carrier offered him any inducement to secure' or in anywise compensated him for an agreement limiting liability for loss or damage, can it be said that the contract which it offers in this case limiting liability is binding or enforcible under the common law as declared by the United States Supreme Court? The Federal rule with reference to such contracts is thus stated in the Croninger case:

"That a common carrier cannot exempt himself from liability for his own negligence or that of his servants is elementary. York Mfg. Co. v. Illinois C. R. Co., 3 Wall, 107, 18 L. Ed., 170; New York C. R. Co. v. Lockwood, 17 Wall, 357, 21 L. Ed., 627; Bank of Kentucky v. Adams Exp. Co., 93 U. S., 174, 23 L. Ed., 872; Hart v. Pennsylvania R. Co., 112 U. S., 331, 338, 28 L. Ed., 717, 720, 5 Sup. Ct. Rep., 151. The rule of the common law did not limit his liability to loss and damage due to his own negligence, or that of his servants. That rule went beyond this, and he was liable for any loss or damage which resulted from human agency, or any cause not the act of God or the public enemy. But the rigor of this liability might be mollified through any fair, reasonable, and just agreement with the shipper which did not include exemption against the negligence of the carrier or his servant. The inherent right to receive a compensation commensurate with the risk involved the right to protect himself from fraud and imposition by reasonable rules and regulations, and the right to agree upon a rate proportionate to the value of the property transported.

"It has, therefore, become an established rule of the common law, as declared by this court in many cases, that such a carrier may, by a fair, open, just, and reasonable agreement, limit the amount recoverable by a shipper in case of loss or damage to an agreed value, made for the purpose of obtaining the lower of two or more rates of charges proportioned to the amount of the risk."

Applying these principles to the case at bar, we have a simple question of fact, and that is, was the contract limiting the amount of recovery a fair, open, just, and reasonable agreement, made for the purpose of obtain-

ing the lower of two or more rates of charges proportioned to the amount of the risk? The appellant, in substance, set up the facts about filing schedules, choice of rates, declared value, etc., tending to show that the contract was fair and reasonable. The reply of appellee denies the facts. The burden of proof was, therefore, upon appellant, and failing to offer any proof to sustain its position, it was, therefore, liable for the whole loss and damage due to its own negligence, or that of its servants. Had appellant proved that it filed the schedule of graduated rates with the Interstate Commerce Commission, as required by law, then the burden of proof on this proposition would have been different. But, until it establishes the filing of such rates, the burden is on it to show the fairness and reasonableness of the contract for interstate shipment, if it attempts to limit liability on graduated rates. When the fact of filing is established, the shipper is compelled to take notice of the rates contained in the tariff schedule, ''not only because referred to in the contract signed by them, but because they had been lawfully filed and published.'' M. K. & T. Ry. v. Harriman, 227 U. S., 669.

When the carrier graduates its rates by value, and has filed its tariffs showing the rates applicable to a particular commodity or article of commerce, based upon a difference in valuation, the shipper must take notice for the valuation, as said in the Harriman case, ''automatically determines which of the rates is the lawful rate.'' This doctrine was again set forth in the case of A. T. & S. F. Railroad v. Robinson, 233 U. S., 173, in the following language:

''We regard these cases as settling the proposition that the shipper, as well as the carrier, is bound to take notice of the filed tariff rates, and that so long as they remain operative, they are conclusive as to the rights of the parties, in the absence of facts or circumstances showing an attempt at rebating or false billing.''

The cases referred to in the above quotation are Carl and Harriman, *supra.* See also Robinson v. L. & N., 160 Ky., 235.

If the carrier has filed its schedule of rates, as required by law, then, as we understand from the Supreme Court opinions, both the shipper and carrier are concluded by the provisions of a contract made thereunder.

If the schedule has not been so filed and puolished, as appears to be the case from the record, then the reasonableness of the contract becomes a question of fact, and depends upon whether the value was declared for the purpose of obtaining a lower of two or more rates proportioned to the amount of risk. An issue was made on these facts by the pleadings, with the affirmative, and, therefore, the burden of proof on appellant, and failing to offer any proof, the lower court very properly, as we believe, refused to give an instruction telling the jury to limit recovery according to the terms of the contract.

But on the question of notice we are of opinion that the lower court erred. This question is not affected by the filing or not filing schedule of rates with the Interstate Commerce Commission. The matter of notice is a subject which need not be brought to the attention of the commission in any way—that is, the law does not require it.

In the recent case of Howard & Callahan v. I. C. R. R. Co., 161 Ky., 783, this court had under consideration the reasonableness of a notice requirement in a contract for interstate shipment, and reviewed all the Federal authorities on the subject. It was held that such a requirement was reasonable. In the case at bar, the appellant set up the contract containing a notice requirement, and denied that the shipper had given such notice. The shipper replied, pleading affirmatively that it did give the notice. We have then a prima facie case for the carrier. For, in the absence of proof showing notice, the carrier would prevail on the pleadings. It was incumbent upon the shipper to support his plea of notice by proof that he did give the notice. The appellant set up the contract and the obligation on the part of the shipper to give the notice as a pre-requisite to a right of recovery. Good pleading required of it also a denial that notice had been given, but, under the rules of practice in this State, such denial did not put upon it the burden of proof to establish that negative. For instance, in a suit upon a promissory note the pleader not only claims upon the promise to pay, but avers that the note has never been paid, but no issue is joined on payment if the defendant merely denies that the note has never been paid. If he relies upon payment, he must affirmatively plead it by answer. Notice, like payment, is one of the disputable presumptions of law, which must

be negatived in the pleading of the party claiming the right, because there is a presumption that the obligor has done that which he promised, viz., paid the note or given the notice. But in such a case the pleader does not take the burden of proof. Newman on Pleadings and Practice, Section 214.

As is said in Section 124d of the same work:

"So, also, payment  *  *  *  must be relied on in the answer as new matter, and cannot be given in evidence under an issue formed by a denial of the allegations of the petition." Bentley v. Bustard, 16 B. Mon., 675.

We have reached the conclusion that Cook, the shipper, should have supported his plea of notice by proof, and failing to do so he was not entitled to recover under the contract. Therefore, the lower court erred in refusing to so instruct the jury.

The judgment is reversed, with direction for a new trial in conformity with this opinion.