## THOMAS LEVANGIE'S CASE.

Suffolk.　　June 25, 1917. — September 19, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Workmen's Compensation Act. Jurisdiction. Waiver.*

The Industrial Accident Board is not a court of general or limited common law jurisdiction. It is purely and solely an administrative tribunal, specifically created to administer the workmen's compensation act with the assistance of the Superior Court, and as such a tribunal the board possesses only such authority and power as have been conferred upon it by express grant or arise from such a grant as necessary and incident to the granted powers.

From the nature of the Industrial Accident Board as a special administrative tribunal created for the administration of the workmen's compensation act it follows that a full performance of the conditions of the act is prerequisite to its jurisdiction and that the extent and limits of its statutory authority cannot be enlarged, diminished or destroyed by express consent or by waiver.

Under the provision of the workmen's compensation act contained in St. 1911, c. 751, Part III, § 5, as amended by St. 1912, c. 571, § 10, and St. 1914, c. 708, § 9, that, "If the association and the injured employee fail to reach an agreement in regard to compensation under this act, or if they have reached such an agreement, which has been signed and filed in accordance with the provisions of this act, and compensation has been paid or is due in accordance therewith and the parties thereto then disagree as to the continuance of any weekly payments under such agreement, either party may notify the Industrial Accident Board who shall thereupon call for the formation of a committee of arbitration," the Industrial Accident Board has no jurisdiction to call an arbitration committee, where an agreement for compensation filed with and approved by the Industrial Accident Board has been performed fully by the insurer and there never has been any disagreement as to the continuance of any weekly payment under the agreement, where the failure of the employee to file a claim for additional compensation with the Industrial Accident Board within the time required by

St. 1911, c. 751, Part II, § 15, was not due to physical or mental incapacity or the result of ignorance of the right to additional compensation under St. 1911, c. 751, Part II, § 11, as amended, and where there was no mistake of fact as to the time of the injury or as to its nature, degree or probable permanency or other "reasonable cause" within the meaning of St. 1911, c. 751, Part II, § 23, added by St. 1912, c. 571, § 5, for the failure to make a claim within the period prescribed by § 15, and no claim was filed with the board within a reasonable time after the employee first learned definitely of the permanency of the specific injury on which his claim for additional compensation was based.

In the same case it appeared that, at the time the agreement for compensation was approved by the Industrial Accident Board, an examination of the records of the hospital and of the report of a physician would have disclosed to the board the fact that the legs of the employee were then and always would be permanently incapable of use, and it was *said* that the approval of the agreement by the board without an examination and consideration of this evidence did not afford a proper ground for reopening the agreement.

APPEAL to the Superior Court under St. 1911, c. 751, Part III, § 11, as amended by St. 1912, c. 571, § 14, from a decision of the Industrial Accident Board awarding to Thomas Levangie, the employee, under the circumstances stated in the opinion additional compensation for a period of one hundred weeks on the ground that both legs were permanently incapable of use by reason of his injury.

The case was heard by *Fox*, J. The proceedings and the essential facts are described in the opinion. The judge made a decree that the insurer should pay to the insured the sum of $1,000 for specific compensation. The insurer appealed.

The case was submitted on briefs.

*N. F. Hesseltine & J. F. Scannell*, for the insurer.

*G. Gleason*, for the employee.

PIERCE, J. On May 19, 1913, the employee, a carpenter in the employment of Simpson Brothers Corporation, a subscriber, slipped and fell backward from a staging a distance of about fourteen feet, thereby receiving a physical injury which the insurer admits arose out of and in the course of the employment.

The facts present a typical history of a fractured spine caused by an accident. Ever since the accident the legs of the employee have been paralyzed from above the hips down and have been absolutely without sensation or power. From the time of the injury the employee has been practically bedridden and is and has been absolutely incapacitated for any work which requires moving legs. "Aside from the complete paralysis of his legs (and sphincters)

he is apparently in excellent health." At the hearing before the committee in answer to the question "You knew your back was broken?" the employee testified "I know now. I knew my back was fractured, but people time and again come to my bed and told me that people were the way I was and come through all right, so I lived in that hope." He further testified: "I never expected to use them as before I injured them," "I always had hopes that they would come around all right," and thought as late as June 16, 1916, "I would get on crutches, and finally get better so I could walk around a little bit." To the question "That was your hope?" he answered, "Yes."

Shortly after the accident the insurer and the employee reached an agreement in regard to compensation for the period of total disability to begin June 2, 1913. This agreement was filed with the Industrial Accident Board and was approved by it upon June 30, 1913. St. 1911, c. 751, Part III, § 4, as amended by St. 1912, c. 571, § 9. Subsequently a decree in the Superior Court was entered thereon. St. 1911, c. 571, Part III, § 11, as amended by St. 1912, c. 571, § 14. Since June 30, 1913, payments have been made uninterruptedly to the employee in performance of the terms of the agreement of compensation.

On June 16, 1916, the Industrial Accident Board refused to approve an agreement to accept a lump sum payment of $1,100 in addition to $1,490 then already received, in redemption of the liability of the insurer for all subsequent weekly payments, because not satisfied that the proposed settlement was for the best interest of the employee or his dependents. St. 1911, c. 751, Part II, § 22, as amended by St. 1914, c. 708, § 8. Upon the solicitation of a former member of the Industrial Accident Board to be permitted "to handle" on a percentage basis the claim of the employee, the employee signed a contract to that end and thereafter on September 13, 1916, filed with the Industrial Accident Board a "Notice of Failure of Parties to Reach an Agreement," the cause of the disagreement being given as the "refusal of insurer to pay specific compensation for the loss of the use of both legs." St. 1911, c. 751, Part III, § 5, as amended by St. 1912, c. 571, § 10; St. 1914, c. 708, § 9. At the request of the employee the Industrial Accident Board called an arbitration committee which met on Saturday, October 7, 1916, and again by adjournment on October 21, 1916,

and proceeded to take testimony notwithstanding the objection of the insurer that the committee was without jurisdiction in the case.

No claim for compensation was filed by the employee with the Industrial Accident Board previous to the hearing before the arbitration committee. A claim for compensation, defective and inadequate because of its failure to set out the cause of the fall from which the injury resulted, was filed with the Industrial Accident Board October 30, 1916.

The act in Part II, § 15, provides that: "No proceedings for compensation for an injury . . . shall be maintained . . . unless the claim for compensation with respect to such injury shall have been made within six months after the occurrence of the same; or, . . . in the event of his physical or mental incapacity, within six months after . . . the removal of such physical or mental incapacity." The formal and essential requisites of such a claim as set out in Part II, § 23, amended by St. 1912, c. 571, § 5, are, that "The claim for compensation shall be in writing and shall state the time, place, cause and nature of the injury; it shall be signed by the person injured or by a person in his behalf, or, in the event of his death, by his legal representative or by a person in his behalf, or by a person to whom payments may be due under this act or by a person in his behalf, and shall be filed with the Industrial Accident Board. The failure to make a claim within the period prescribed by section fifteen shall not be a bar to the maintenance of proceedings under this act if it is found that it was occasioned by mistake or other reasonable cause."

In support of the authority of the Industrial Accident Board to call the arbitration committee before the filing of any claim for compensation with the board, the employee contends that the inhibition of the act that "No proceedings for compensation for an injury . . . shall be maintained . . . unless" a written claim shall have been made within the time provided by the act, has been "waived by the agreement of the insurer to pay compensation, the approval of such agreement by the Industrial Accident Board, and the decree of the Superior Court based on this agreement." The answer to this position is that the Industrial Accident Board is not a court of general or limited common law jurisdiction; that it is purely and solely an administrative tribunal, specifically cre-  ·

ated to administer the workmen's compensation act in aid and with the assistance of the Superior Court, St. 1911, c. 751, Part III, § 3, as amended by St. 1912, c. 571, § 8; St. 1915, cc. 123, 275; St. 1911, c. 751, Part III, § 11, as amended by St. 1912, c. 571, § 14; *Opinion of the Justices*, 209 Mass. 606; *McNicol's Case*, 215 Mass. 497; *Brown's Case, ante*, 31, and as such possesses only such authority and powers as have been conferred upon it by express grant or arise therefrom by implication as necessary and incidental to the full exercise of the granted powers. *Mackin* v. *Detroit-Timkin Axle Co.* 187 Mich. 8. *Borgnis* v. *Falk Co.* 147 Wis. 327, 359.

It follows that full performance of the conditions of the act are essential prerequisites to the jurisdiction of the board, and that its authority and the statutory limitation upon the exercise of it cannot be enlarged, diminished or destroyed by express consent or waived by acts of estoppel. *Webster* v. *Commonwealth*, 5 Cush. 386, 404. *Elder* v. *Dwight Manuf. Co.* 4 Gray, 201, 204. *Jochumsen* v. *Suffolk Savings Bank*, 3 Allen, 87. *Bearce* v. *Bowker*, 115 Mass. 129, 130. *Santom* v. *Ballard*, 133 Mass. 464. See *Fierro's Case*, 223 Mass. 378; *Bushnell* v. *Industrial Board of Illinois*, 276 Ill. 262.

It is further contended that the Industrial Accident Board acquired jurisdiction under St. 1911, c. 751, Part III, § 5, as amended by St. 1912, c. 571, § 10, St. 1914, c. 708, § 9, which provides: "If the association and the injured employee fail to reach an agreement in regard to compensation under this act, or if they have reached such an agreement, which has been signed and filed in accordance with the provisions of this act, and compensation has been paid or is due in accordance therewith and the parties thereto then disagree as to the continuance of any weekly payments under such agreement, either party may notify the Industrial Accident Board who shall thereupon call for the formation of a committee of arbitration." We are of opinion that the quoted provision did not confer jurisdiction upon the Industrial Accident Board to call an arbitration committee before the filing of a claim for compensation, St. 1911, c. 751, Part II, § 15, because upon the facts the agreement as approved by the Industrial Accident Board has been fully performed by the insurer, there has never been any disagreement as to the continuance of any weekly payment under

the agreement, the failure of the employee to file a claim for compensation with the Industrial·Accident Board before October 30, 1916, was not due to physical or mental incapacity, or the result of ignorance of the right to additional compensation under St. 1911, c. 751, Part II, § 11, and acts in amendment thereof, nor was there a mistake of fact as to the time of the injury or as to its nature, degree or probable permanency or other "reasonable cause" within the meaning of St. 1911, c. 751, Part II, § 23, as amended by St. 1912, c. 571, § 5, for the failure to make a claim within the period prescribed by § 15. *McLean's Case*, 223 Mass. 342. *Gorski's Case*, 227 Mass. 456. Moreover, the claim filed with the Industrial Accident Board on October 30, 1916, was not presented to that board within a reasonable time after October 2, 1916, the day when the employee first learned definitely that his legs were rendered permanently incapable of use. *Carroll's Case*, 225 Mass. 203.

An examination of the records of the hospital and the report of Dr. Baldwin would have disclosed to the Industrial Accident Board that the legs of the employee were then and always would be permanently incapable of use, but its approval of the agreement without an examination and consideration of this evidence does not afford a proper ground for reopening the agreement.

As the hearing before the committee was called improperly it becomes unnecessary to consider the objections taken to the admission of testimony at the hearing or the requests for rulings. *Buck* v. *Dowley*, 16 Gray, 555.

The decree should be reversed and a decree entered to the effect that there is no claim against the insurer.

*So ordered.*