# Rankin v. Cincinnati, New Orleans & Texas Pacific Railway Company.

(Decided February 25, 1915.)

## Appeal from Boyle Circuit Court.

1. Carriers—Livestock—Contract Limiting Liability—Published Rates.—Where there is no valid agreement between the shipper and the carrier fixing the maximum valuation of livestock in case of loss at less than the maximum valuation prescribed by the filed tariff rates, and no facts or circumstances showing an attempt at rebating or false billing, the filed tariff rates, including the maximum valuation therein prescribed, are conclusive of the rights of the parties.

2. Carriers—Loss or Injury to Livestock—Measure of Damages.— Where the liability of a carrier of livestock is limited to $100 a head, the measure of damages for stock killed is their market value not exceeding $100 a head, and for stock injured and sold by the carrier, the measure of damages is the proceeds of the sale of the injured stock, less the expense of their sale and the reasonable cost of their keep from the time they were injured, and in addition thereto the difference between the market value of the stock injured at the point of destination if they had arrived there in ordinary condition, considering the distance of transportation, and their market value at the point of destination in the condition in which they did arrive.

3. Carriers—Livestock—Interstate Shipment—Contract Limiting Liabiliy.—Where, under the schedule of rates on file with the Interstate Commerce Commission, the rate for an interstate shipment of livestock is $95 a car, based on the maximum valuation of $100 a head, in case of damage or loss, and the contract of shipment is an old bill of lading reciting that the published freight rates on livestock of said carrier "are in all cases based on the following maximum valuations: * * * Horses or mules, not exceeding $75," and is executed by the shipper and carrier in ignorance of the fact that the maximum valuation of $75 does not correspond to the maximum valuation prescribed by the established rate, without any agreement fixing the maximum valuation at less than the established rate, and the stock injured or killed are worth much more than the maximum valuation prescribed by the established rates, the shipper will not be bound by the maximum valuation incorrectly stated in the contract of shipment.

ROBERT HARDING and CHAS. C. FOX for appellant.

CHAS. H. RODES, NELSON D. RODES and JOHN GALVIN for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

This is the second appeal of this case. The opinion on the former appeal may be found in 153 Ky., 730, where the facts are fully set forth. The judgment on the former appeal was reversed for error in sustaining plaintiff's demurrer to the amended answer of defendant pleading a contract limiting its liability for loss or damage of the stock shipped to $75 a head, in consideration of the lower of two rates provided by the schedule on file with the Interstate Commerce Commission. On the second trial there was a judgment for plaintiff. Plaintiff appeals.

A reversal is asked because of certain alleged errors depriving plaintiff of the full amount of damage to which he claims he was entitled.

On the return of the case to the court below defendant filed amended answer No. 4, by which it pleaded, in substance, that its schedule of rates on file with the Interstate Commerce Commission, and in full force at the time of the shipment, provided for a rate of $95 a car, based on an agreed valuation not exceeding $100 a head, and that for every increase of 100%, or fraction thereof, in the said valuation, there should be an increase of 20% in freight rates; that in the contract of shipment plaintiff's agent and the agent of defendant agreed that the value of the stock shipped did not exceed $75 a head, and that the rate of $95 was agreed to in consideration of defendant's liability being limited to the sum of $75 a head. The allegations of the amended answer were denied by reply. Subsequently an amended pleading was offered, setting up the defense that the contract was obtained by fraud and deceit. The court declined to permit the amended pleading to be filed. The facts developed before the jury are as follows:

The contract of shipment is headed as follows:

"A contract for limited liability in the transportation of live stock at reduced rates."

The contract provides that it is subject to the following terms and conditions:

"That the published freight rates on live stock of said carrier are, in all cases, based on the following maximum valuations, which are as high as the profit in the freight rates will admit of the carrier assuming responsibility for:

"* * * Horses and Mules, not exceeding................$75.00"

The contract further provides that ''for every increase of one hundred per cent., or fraction thereof, in the above valuations, there shall be an increase of fifty per cent. in the freight rate.'' The freight rate guaranteed by the carrier in view of the stipulated valuations is left blank. The bill of lading was an old form that had been in use for several years, and was based on printed maximum valuations applicable to a rate no longer in force. It inaccurately stated that the maximum valuation of horses and mules possible to obtain the minimum published rate was $75, instead of $100, as provided by the schedule of rates existing and on file at the time. The bill of lading had never been changed to conform to the new schedule of rates. The reason why these inaccurate statements in regard to the rates then in force appeared in the bill of lading was because the station agent at Danville had not himself discovered that the printed form did not correctly state the rates. The contract was executed under the following circumstances: The agent claims that he asked Mr. Rankin the following question: ''Do you want to ship these mules under a contract valuation?'' Whereupon Mr. Rankin said: ''Yes. It don't amount to anything anyway.'' This conversation Mr. Rankin denies. After the blanks had been filled out by the agent's clerk it was handed to Mr. Rankin and signed by him. Under these circumstances, the trial court held that defendant's liability was limited to $75 a head. Counsel for appellee insist that this ruling was correct, for the parties had a right to agree on a valuation less than the maximum prescribed by the established rate, and this they did by executing the contract under the circumstances referred to. The proposition that the company and shipper are not required to agree on the maximum valuation, but may agree on a valuation less than the maximum, cannot be disputed; and if this were that kind of a case, the ruling of the lower court would have been undoubtedly correct. As a matter of fact, however, the mules were worth almost, if not, three times as much as the maximum valuation printed in the old bill of lading, which did not in any respect correspond to the scheduled rate applicable to the shipment in question. No conversation with reference to the value of the stock occurred between the shipper and the company's agent. They did not agree on any valuation less than the maximum. The contract was executed by the parties in the

belief that the contract truly and accurately stated that the published freight rates were based on a maximum valuation of $75 each, when, as a matter of fact, the published rates were based on a maximum valuation of $100 each. Assuming that the agent did ask the shipper if he wanted to ship the mules under a contract valuation, did not the shipper have the right to believe that he would be entitled to the maximum valuation based on the published rate, unless he willingly agreed to a less valuation? While it is doubtless true that where the shipper signs a contract limiting the carrier's liability to an agreed valuation based on the published rate, his failure to state the value in no wise affects the question, but, on the contrary, he will be conclusively presumed to have agreed to the maximum valuation. Kansas City So. Ry. Co. v. Carl, 227 U. S., 639, 57 L. Ed., 683. Yet the mere fact that the shipper signed the bill of lading containing a maximum valuation not based on the published rate, but on an old rate no longer in force and to which his attention was never called, and which he had the right to believe was the correct maximum valuation, cannot be regarded as conclusive of his rights, in view of the circumstances under which he signed the contract. Though it may be that no fraud was intended, the effect was to mislead plaintiff and secure his signature to a contract that both he and the agent believed correctly stated the maximum valuation based on the established rate. Looking at the agreement in the light most favorable to the company, the fixing of the maximum valuation of $75 a head was certainly a result of mutual mistake by the parties, and cannot be upheld. What, then, are the rights of the parties? There being no valid agreement fixing the maximum valuation in the case of loss at less than the maximum valuation prescribed by the filed tariff rates, and no facts or circumstances showing an attempt at rebating or false billing, we conclude that the filed tariff rates, including the maximum valuation therein prescribed, are conclusive of the rights of the parties (Atchison, T. & S. F. R. Co. v. Robinson, 233 U. S., 170, 58 L. Ed., 901), and the trial court should have held that defendant's liability was limited to $100 a head, instead of $75 a head, and have authorized a recovery on that basis.

The trial court instructed the jury to find for plaintiff in the sum of $75 a head for the five mules that were killed, and also the sum of $477.50, the proceeds of the

sale of the four head of stock that were injured. The effect of the instruction was to permit plaintiff to recover only the proceeds of the sale of the injured stock, and to allow him nothing for the diminution in their value occasioned by their injury. In view of the fact that our former opinion and our response to the petition for rehearing are not as clear on this point as they should have been, and are fairly susceptible of the construction placed thereon by the trial court, that court is in no way to blame for giving the instruction complained of. Inasmuch, however, as the judgment must be reversed on other grounds, we deem it proper to say that, though our language may have been susceptible of that construction, we did not intend to hold that plaintiff could recover nothing for the diminution in the value of the injured stock. The injured stock was sold by the defendant. The stock belonged to plaintiff. The proceeds of the sale of the stock were his property, less the expense of their sale and the reasonable cost of their keep from the time that they were injured. This sum plaintiff is entitled to at all events. It is in no way affected by the contract of shipment. In addition to this sum plaintiff is entitled to recover the difference between the market value of the injured stock at Atlanta, the point of destination, if they had arrived there in ordinary condition, considering the distance of transportation, and their market value at Atlanta in the condition in which they did arrive, the damage in no event to exceed $100 a head. Plaintiff is also entitled to recover the market value of the stock killed, not exceeding $100 a head.

Judgment reversed and cause remanded for new trial consistent with this opinion.