## Cincinnati, New Orleans & Texas Pacific Railway Company v. Smith & Johnston.

(Decided June 3, 1915.)

### Appeal from Boyle Circuit Court.

1. Trial—Law of the Case.—Where, on a retrial of a case in the lower court, after appeal to this court, the evidence was substantially the same as on the first trial, and the jury were instructed as directed by the decision of this court, that is the law of the case, binding alike upon this and the trial court.

2. Pleading—Amendment.—Under Secton 134, Civil Code, the court may, at any time, in furtherance of justice, and on such terms as may be proper, cause or permit a pleading or proceeding to be amended: When issues have been joined, the propriety of permitting an amendment is brought in question by an objection to its filing, and this is true, although it is made up of different paragraphs, some of which may present a valid defense. The objection goes to each paragraph, and the court, in its discretion, may permit defense by one paragraph and reject the others.

3. Pleading—Amendment—Shipments of Live Stock.—The provision in a contract for an interstate shipment of live stock requiring that the shipper give five days' notice of any loss or damage to the stock is subject to waiver, and where after nearly three years from the shipment, protracted litigation, one trial, and much cost, defendant offered to plead by way of amendment, want of notice in bar of the action, the court properly refused to permit the same to be filed.

4. Pleading—Amendment—Appeal and Error.—Although the court should have permitted defendant to file its amendment setting up stress of weather as a defense, where evidence was heard and the jury instructed as though a timely written plea had been filed, its substantial rights were not prejudiced, and it is not entitled to a reversal upon that score.

5. Pleading.—Another paragraph of appellant's answer plead limitation of liability to the declared value of the stock. Appellant's

substantial rights were not prejudiced by the failure to allow this plea, where it appears that the recovery was substantially within the limited liability.

6.  Appeal and Error.—Considering the amount in controversy and the number of trials, and the expense incurred, this court will not direct a reversal, although it appears that perhaps appellee recovered $13.80 in excess of the liability as limited by the contract of shipment.

JOHN GALVIN, NELSON D. RODES and CHARLES H. RODES for appellant.

CHARLES C. FOX for appellees.

Opinion of the Court by Judge Nunn—Affirming.

This litigation grows out of four different shipments of livestock which appellees made during the winter of 1911-12 over appellant's line of railway from Danville, Kentucky, to Cincinnati, Ohio. In March, 1912, appellees sued to recover $889 damages due to the negligent carrying and delayed delivery of the stock. The case was tried in September, 1912, and appellee recovered judgment for $623. Upon appeal to this court, the judgment was reversed (155 Ky., 481; 159 S. W., 987). Thereafter the case stood for trial at the January term, 1914, but, on motion of the appellees (plaintiffs), it was continued. It was tried at the April term and appellees recovered judgment for the sum of $500, and appellant again brings the case here for review, and calls attention to certain rulings of the lower court which it claims were erroneous and highly prejudicial.

As stated in the former opinion, "each shipment constituted a separate and distinct transaction," and they were treated as separate cases. They will be so considered on this appeal, and again referred to by number. It will not be necessary to recite the facts, because they are fully set forth in the former opinion.

No. 1 was reversed for error in the instructions, and, after indicating a proper instruction, we said:

"Upon a retrial of the case, if the evidence be the same, the instruction under this paragraph should be along the lines above indicated."

The evidence on the second trial was substantially the same as on the first, and the jury were instructed as directed. But appellant now insists that the evidence was incompetent and cites this court's criticism of the

evidence as to shipment No. 3.  For that reason it claims that the court on the retrial should have given a peremptory instruction instead of the instruction directed.  While some of the evidence was subject to the criticism named, yet there was enough competent evidence to take the case to the jury.  Moreover, we regard the decision on the former appeal as the law of the case, binding alike upon this and the trial court.

The same may be said as to shipment No. 2.  On the former trial this was considered a through shipment from Danville to Jersey City, New Jersey.  The cattle were loaded on the cars at Danville in good condition. They were unloaded at the Union Stock Yards in Cincinnati.  Appellant says that it was after they were unloaded, or on the next day, when it was discovered that two of the cattle were down and badly bruised. Appellant contended then, and contends now, and properly so, that it cannot be called upon to account for the injuries until the shipper has shown, not only that they were in good condition when loaded on the car, but that they reached destination in a damaged condition.  He argues that this requirement is not met by evidence of their condition at a time after delivery at Cincinnati, and asked then, as now, for a peremptory instruction. The opinion noted the fact that witness Schnider says one of the herd was unable to walk to the pen when it arrived in Cincinnati.  The ruling of the lower court in refusing to give a peremptory was approved, however, upon the idea that the cattle were in appellant's custody and control en route to Jersey City, and were unloaded at the Union Stock Yards in Cincinnati by the appellant for the purpose only of resting and feeding them, as required by law.  "The cattle had not left appellant's custody; and, that being true, the question of appellant's liability was properly submitted by the instruction given."

As a matter of fact, this statement as to through billing to Jersey City was erroneous.  Appellant takes the blame for the mistake.  The cattle were consigned to Cincinnati, and, after resting and feeding a day or so there, they were reconsigned to Jersey City.  However, permitting appellant to reopen this question, we believe the evidence on the second trial tended to establish the fact that the cattle were injured in transit—not after being unloaded.  In addition to the testimony of Schni-

der, witness Kaus testifies that he examined the stock, and that two of them were down in the car and badly bruised and damaged. The evidence was substantially the same as on the former trial, and, as said with reference to shipment No. 1, the law then determined is the law of the case on this appeal.

As to shipment No. 3, two questions were involved on the former appeal: (a) Appellant's diligence in handling its cars and train; (b) competency of the evidence introduced to establish the amount of extra feed bills and loss in weight of the cattle. The shipments were made at a time of extreme cold weather. The cattle were driven to appellant's stock pens in Danville about one o'clock P. M. on the 16th. This was by reason of request for cars made the day before. In ordinary course, the cattle would have moved from Danville at 4:20 that afternoon by train 62, which arrived at Cincinnati in time for market next morning. Cars were not placed until 7 P. M.; train 62 had gone and it was not until 4 o'clock next morning (January 17th), that the cattle were moved by train 52. They arrived in Cincinnati at 3:20 P. M. on the 18th. They were so gaunt and worn in appearance, according to the allegation, that they could not be put in condition for sale until the 22nd and 25th. Appellant resisted this claim with proof that the weather was so extremely cold and severe that it was unable, by the use of ordinary care, to get the cattle to Cincinnati at the usual time, or at any time earlier than their arrival. The question was submitted to the jury under instruction approved by this court, and "appellant admits (quoting from the opinion), for the sake of argument, that there was sufficient evidence to carry the case to the jury upon the question of appellant's fault in not getting plaintiff's stock on train No. 62, but insists that there is not a scintilla of proof to show that if the stock had been put on this train, they could or would have reached Cincinnati in time for the market of the 17th." The court said of the instruction, after quoting it:

"By this instruction appellant obtained all it asked, and cannot now complain that the jury found the facts against it respecting its diligence in handling its cars and trains."

But the evidence introduced to show the extent of damage was found on the former appeal to be incompe-

tent, and for that reason a reversal was directed. On the second trial, the errors in admission of testimony were corrected, and, on this appeal, no criticism is made as to the competency of the evidence. But it is again argued that it was entitled to a peremptory instruction as to this shipment, because appellees, as it says, did not show that appellant had been negligent in failing to get the cattle to Cincinnati in time for the market of January 17th. Conductor Coe, of train 62, testified on this trial, and he showed how he and his crew were up all through the bitter cold night of January 16th attempting to bring his train into Cincinnati as soon as possible. It appears that this was the only train that could have gotten the cattle to Cincinnati in time for the market. Coe stated that the reason why he did not get his train into Cincinnati earlier was because of the severe weather, and the fact that superior trains delayed him. This evidence, of course, made appellant's defense as to this shipment much stronger, but the evidence for appellees was not weaker than before; in fact, it was the same, and, as it was decided on the former appeal that the question should be submitted to the jury, that is still the law, and we are bound by it.

As to shipment No. 4, practically the same questions are raised as before, and, the evidence being substantially the same, they are settled by the former appeal.

The most serious question on this appeal grows out of the refusal of the lower court to allow appellant to file an amended answer setting up that this was an interstate shipment, and claiming limit to liability under the Carmack Amendment to the Interstate Commerce Act. The case was prepared below and presented to this court on the first appeal upon the common and statute law of the State. Two days after the mandate had been filed, and five days before the date set for trial at the January term, 1914, the appellant tendered in open court and offered to file its amended answer in three paragraphs. By the first and second, it averred that these were interstate shipments controlled by the interstate commerce law, and that appellant had complied with the law by filing and publishing freight rates which were based on the value of the stock to be carried, and that certain shipment contracts were made between appellant and appellees in limitation of appel-

lant's liability. The contracts contained a provision denying the shipper a right to recover unless claim for damages be made within five days. Failure to claim within the time stipulated was plead in bar of the action. It is further averred in the second paragraph that the shipper had the benefit of a smaller freight rate because of his declared valuation of the stock and his agreement limiting claim for damages to an amount within the declared value. The values so declared were as follows:

$30 per head for cattle, except yearlings; $20 for yearlings; and $5 for sheep, hogs and calves.

The third paragraph avers that by the contracts the shipper agreed not to hold the carrier liable for any delay occasioned by stress of weather, not due to negligence, and that the carrier only agreed to use all reasonable effort to place the stock on the particular market at a specified time, but did not guarantee so to do.

The court sustained plaintiff's objection to the filing of this amended answer at the January term, but continued the case until April on plaintiff's motion. The amendment was retendered at the April term, but the court again refused permission to file it.

Appellant undertakes to justify this delay in tendering the amendment by explaining that when this case was first tried in 1912 the United States Supreme Court had not decided that the Carmack Amendment to the Interstate Commerce Act superseded the State laws governing a carrier's liability for loss or damage to interstate shipments. Prior to that time, the Supreme Court and this court had held, under the Constitution of this State, that a carrier could not limit its common law liability by contract on either intra or inter state shipments. While the case was pending in this court on appeal, the Supreme Court of the United States, on January 6th, 1913, handed down an opinion in the case of Adams Express Company v. Croninger, 226 U. S., 491, wherein the Federal Law was held to control shipments of this character. Appellant says that the facts set up in the amendment would have been irrelevant at the time of the first trial, but since the decision in the Croninger case they have become very pertinent and of great importance.

Section 134 of the Civil Code says:

"The court may, at any time, in furtherance of justice, and on such terms as may be proper, cause or per-

mit a pleading or proceeding to be amended, by adding or striking out the name of a party; or by correcting a mistake in the name of a party, or a mistake in any other respect; or by inserting other allegations material to the case; or, if the amendment do not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved. And, if a proceeding taken by a party fail to conform in any respect to the provisions of this Code, the court may permit an amendment of such proceeding, so as to make it conformable thereto. And, if the allegations of a pleading be so indefinite or uncertain that the precise nature of the claim or defense is not apparent, the court may require the pleading to be made definite and certain by amendment. The court must, in every stage of an action, disregard any error or defect in the proceedings, which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect.''

When issues have been joined, the propriety of permitting an amendment and its sufficiency is brought in question by an objection to its filing, and this is true, although it is made up of different paragraphs, some of which may present a valid defense. The objection goes to each paragraph, and the court, in its discretion, may permit defense by one paragraph and reject the others. Brady v. Peck, 99 Ky., 49. .

It is, however, not necessary here to consider whether there was an abuse of discretion in rejecting the amendment. If appellant was not prejudiced in its substantial rights, it has no ground for reversal. We are of opinion that appellant clearly waived its right to plead the five days' notice clause, and, as will be seen, the rejection of its plea about the weather was not prejudicial. While these were interstate shipments and, therefore, regulated by the Federal law, the subjects just referred to are not directly within the scope of the interstate commerce act. That act regulates charges, fares, and rates, and permits them to be based upon valuation of the article shipped, but it makes no provision on the subject of notice of claim for damages, nor does it afford relief on account of weather conditions. Since the interstate commerce act supersedes all State legislation upon interstate shipments, and makes the Federal law determining in all such cases, its effect on the question of

notice and weather is to make them triable by the com-
mon law as finally declared by the United States Su-
preme Court. Adams Express Co. v. Cooke, 162 Ky.,
592; L. & N. v. Miller, 156 Ky., 677; Howard & Callahan
v. I. C. R. R. Co., 161 Ky., 783.

These are, under the common law, matters of de-
fense, but they are subject to waiver. The amended
answer was the first offer of a written plea setting up
the stress of weather as a defense to the claim, but on
the first trial all evidence offered was heard on the ques-
tion without objection, and the jury was instructed
thereon. At the next trial the jury heard all of the evi-
dence which appellant introduced on the question, and
they were again instructed the same as if the defense
had been interposed by written plea. A timely written
plea could not have better served appellant's defense.

Nearly three years after the shipment was made the
appellant tendered the plea that notice of loss was not
presented within five days and insisted that this barred
the action. This plea does not go to the merits of the
case. Upon the others appellant was entitled to be
heard. But it would be a great injustice to the plaintiff,
when issues are joined, and after protracted litigation,
one trial, and much cost, if defendant should then be
permitted to plead want of notice as a bar. Amended
pleadings are allowed in furtherance of justice—not to
defeat it. The latter would be the effect of this plea at
this late day. The reasons given for the delay make a
reasonable explanation of it, but they afford no reason
for inflicting a hardship upon appellees, who did not
cause the delay. The Howard & Callahan case, *supra,*
discussed at length the question of waiver of a stipula-
tion of this sort in the contract for interstate shipments
and said:

"There seems no good reason why this character of
condition in a contract for carriage cannot be waived."

And, as already stated, in our opinion, the defense
and trial of this case clearly amounts to a waiver of the
notice.

As to the limited liability by the agreed valuation,
appellant argues that appellee obtained the lowest
freight rate which the published schedule allowed on
livestock from Danville, Kentucky, to Cincinnati, Ohio,
and that the rate was based on a limited maximum val-
uation for each kind of stock. It does not follow, how-

ever, that appellee claimed or was allowed to recover upon a valuation in excess of that permitted by his contract and the published schedule of rates, at least, not to such a material extent as would authorize a reversal. Unless that be the case, appellant has not been prejudiced.

In shipment No. 1 the claim was for the value, or rather the net loss on two hogs. The loss established was $16.30. By the shipping contract the damage recoverable was limited to $5 for each hog, or $10 on this claim. Assuming that the jury allowed $16.30, the appellee recovered $6.30 more than was proper.

No. 2 was a shipment of 52 head of cattle. Two of the herd were damaged and the contract limited recovery on this score to $60. The alleged damage was $67.50. Assuming that the jury included this sum in the damages allowed, appellant then recovered $7.50 more than was proper.

Shipment No. 3 was 57 head of cattle. The $536 damage alleged went to the whole bunch and was made up of extra feed bill, loss in flesh, and decline in market. According to the contract, the amount recoverable per head was limited to $30, or a total of $1,710, but, assuming that the jury allowed the $536 claimed, it amounted to $9.40 per head, and this is within the contract limit.

In shipment No. 4 appellee claimed $58.50 for shrinkage on 21 head of cattle, and market loss on the same $44.45, and $78 damage to three steers, making a total of $180.95 on the 21 cattle, or an average of about $9 per head. The contract liability was limited to $30 per head. In the same shipment the damage to 7 calves was placed at $10, while the contract liability was limited to $5 per head. There was $8.67 market loss on 45 hogs, which was, of course, within the contract liability of $5 per head. So it is clear that, even if it be assumed that the jury awarded to appellee his entire claim, the contract liability was exceeded to the extent only of $6.30 on two hogs, and $7.50 on two cattle, or a total of $13.80. But the jury did not allow $889, the amount claimed. Their verdict was for $500. There have already been two trials of this case, and we think the maxim *de minimis non curat lex* applies.

This court has many times held that a judgment will not be reversed for a trivial excess, where the cost of another trial would exceed the reduction to which appel-

lant would be entitled. Henry Clay Fire Ins. Co. v. Barkley, 160 Ky., 153; C., N. O. & T. P. Ry. Co. v. Veatch, 162 Ky., 136, and cases there cited.

But appellant argues that if appellees undervalued their stock no recovery can be had if, when delivered, they were worth as much as their declared value, although materially damaged and worth much less than their original value. But these contracts were not intended as a relief against negligence, nor do they authorize the carrier to inflict a limited amount of damage. For such damages as may be inflicted the contracts merely limit the amount of recovery to a sum within the declared value. That is the clear meaning of the contract, which reads as follows:

"That the said shipper, in order to avail himself of said published freight rates, agrees that said carrier shall not in any case of loss or damage to said livestock be liable for any sum in excess * * * of the values above stated."

The case of Rankin v. C., N. O. & T. P. Ry. Co., 163 Ky., 183, 173 S. W., 377, was an interstate shipment of mules from Danville, Ky., to Atlanta, Ga., and the contract limited liability to $100 per head. The true measure of damage was thus stated:

"The plaintiff is entitled to recover the difference between the market value of the injured stock at Atlanta, the point of destination, if they had arrived there in ordinary condition, considering the distance of transportation, and their market value at Atlanta, in the condition in which they did arrive, the damage in no event to exceed $100 per head."

Judgment affirmed.